## MAHN *v.* HARWOOD & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF MASSACHUSETTS.

Submitted October 16, 1884.—Decided November 3, 1884.

A patent for ball-covers issued to James H. Osgood May 21, 1872, reissued
April 11, 1876, held invalid as to the new and enlarged claims, because
there was unreasonable delay in applying for it, the only object of the re-
issue being to enlarge the claims.

The principles announced in the case of *Miller* v. *The Brass Company*, 104 U.
S. 350, in reference to reissuing patents for the purpose of enlarging the
claims, reiterated and explained.

It was not intended in that case to question the conclusiveness, in suits for in-
fringement, of the decisions of the Commissioner of Patents on matters of
fact necessary to be decided before issuing the patent, except as the statute
gives specific defences ; but those defences are not the only ones that may
be made ; if it appears that the Commissioner has granted or reissued a
patent without authority of law, this will be a good defence ; as, where the
thing patented is not a patentable invention, or where a reissue is for a
different invention from that described in the original patent, &c.

A patent cannot be lawfully reissued for the mere purpose of enlarging the
claim, unless there has been a clear mistake inadvertently committed in the
wording of the claim, and the application for reissue is made within a
reasonably short time. Whether there has been such an inadvertent mis-
take is, in general, a matter of fact for the Commissioner to decide ; but
whether the application is made in reasonable time is matter of law, which
the court may determine by comparing the reissued patent with the original,
and, if necessary, with the records in the Patent Office when presented by
the record.

The application for a reissue in such cases must be made within a reasonable
time, because the rights of the public, conceded by the original patent, are
directly affected and violated by an enlargement of the claim ; and the
patentee's continued acquiescence in the public enjoyment of such right, for
an unreasonable time, justly deprives him of all right to a reissue, and the
Commissioner of lawful authority to grant it.

No invariable rule can be laid down as to what is a reasonable time within
which the patentee must seek for the correction of a claim which he considers
too narrow. It is for the court to judge in each case, and it will exercise
proper liberality towards the patentee. But as the law charges him with
notice of what his patent contains, he will be held to reasonable diligence.
By analogy to the rule as to the effect of public use before an application
for a patent, a delay of more than two years would, in general, require
special circumstances for its excuse.

As, in the present case, there was a delay of nearly four years, and the original patent was plain, simple, and free from obscurity, it was held that the delay in seeking a correction by reissue was unreasonable, and that the Commissioner had, therefore, no authority to grant it ; and the patent was held invalid so far as the claims were broader than those in the original patent.

This was a suit in equity for alleged infringement of a patent praying for an accounting, for damages, and a perpetual injunction. Decree below for defendants, dismissing the bill, and appeal to this court by plaintiff. The facts are stated in the opinion of the court.

*Mr. Thomas William Clarke* for appellant.

*Mr. J. E. Maynadier* for appellees.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This suit was brought on a patent relating to leather covers of "base-balls and other similar articles." The patent was originally issued to one James H. Osgood, of Boston, under date of May 21, 1872. The bill states that Osgood afterwards assigned this patent to Louis H. Mahn, the complainant below, appellant here. On the 11th of April, 1876, it was reissued, and the suit is brought on the reissue against the Harwoods, charging infringement. Except in stating the nature of the invention, and the claims, the specifications of the original and reissued patents are precisely alike. The description and accompanying drawings are not changed.

Briefly stated, the specification describes a leather ball-cover composed of two hemispherical parts, each being moulded into form when in a wet state, and, after being dried, sewed together on to the ball by a peculiar stitch, called a double herring-bone stitch; then a second cover made in precisely the same manner, and sewed on to the ball, outside of the first cover, in such manner that the stitches of the two covers may cross each other at right angles.

In the original patent it is stated that the nature of the invention consists, first, in the employment of a new stitch, called the double herring-bone secured stitch, whereby only one stitch can be broken at a time ; second, in the employment of a binder

of leather next the yarn of a base-ball, or as a first cover to other round articles, so stitched and put on that the outer covering when applied shall have its seams at right angles, or breaking joints, with the seams of the first cover; third, in making the leather covers of a hemispherical shape, by compression and crimping in properly shaped moulds with plungers, while wet, after which they are dried in shape and then softened by moisture, stretched on and sewed.    The claims of the original patent are the two following, namely :

" 1.  A ball exterior, composed of two crimped hemispherical covers, $A$ and $B$, having their respective seams $x$ and $y$ break joints, substantially as set forth.

" 2.  In combination with a ball whose exterior is composed of two hemispherical covers $A$ and $B$, with their respective seams $x$ and $y$ breaking joints, I claim the double herring-bone stitch formed of two threads, in the manner herein set forth."

The letters $A$ and $B$, in the drawing, designate the two covers, one outside of the other ; and the letters $x$ and $y$ designate the respective stitches of those covers.

The whole invention claimed, therefore, in the original patent, was, first, the two leather covers (an outside one and an inside one), with their respective seams crossing at right angles ; and second, the double herring-bone stitch in combination with the two covers.

In the reissue it is stated that " the nature of the invention consists, first, in the cover of a base-ball formed of two pieces of leather suitably secured to each other ; second, the seams of a base-ball united by the double herring-bone knotted lock-stitch ; third, a base-ball covering consisting of an outer and an inner covering applied to the ball independently of each other ; fourth, a base-ball covering consisting of independent outer and inner coverings made of hemispherical sections, the seams of the inner and outer covers arranged relatively to each other to break joints : " and this reissue has the four following claims, namely : ·

" 1.  A base-ball cover formed of two pieces of leather, secured to each other by a single seam, substantially as and for the purpose specified.

" 2. A base-ball cover having its seam united by the double herring-bone knotted lock-stitch, substantially as and for the purpose specified.

" 3. The covering of a base-ball consisting of an outer and an inner covering, each of which is composed of two pieces of leather, and applied to the ball independently of each other, substantially as and for the purpose specified.

" 4. A base-ball covering composed of independent inner and outer coverings, made up of hemispherical sections, the seams of the inner and outer covers arranged relatively to each other, to break joints, substantially as and for the purpose specified."

It is apparent that, in the reissue, the claim of invention is greatly enlarged. The patentee claims therein, first, any and every single base-ball cover formed of two pieces of leather, fastened together by a single seam, substantially as and for the purpose described; secondly, any and every base-ball cover having its seam united by the double herring-bone stitch, substantially, &c.; thirdly, every and any use of two covers on a base-ball, each made of two pieces of leather, and applied to the ball independently of each other, substantially, &c. The fourth claim is nearly equivalent to the first claim of the original patent. The others are all new.

It is clear, therefore, on the face of the patents, that the only object of the reissue was to enlarge the claims. The description was not altered in the least. The claims in the original patent were clear and explicit, one of them being substantially retained in the reissue. Nothing was altered, nothing was changed, but to multiply the claims and to make them broader. And this was done, not for the benefit of the original patentee, but for that of his assignee; and was done after the lapse of nearly four years from the granting of the original patent. The case seems to come clearly within the principles laid down in *Miller* v. *The Brass Company*, 104 U. S. 350, and if we were right in the conclusions arrived at in that case, we do not see how we can sustain the patent sued on in this. The counsel for the appellant seems to be aware of this, and, in his argument directs his efforts mainly to attack the principles there ex-

pressed, although they have been frequently reiterated in subsequent cases. We deem it proper, therefore, to say, once for all, that the views announced in *Miller* v. *The Brass Company* on the subject of reissuing patents for the purpose of expanding and enlarging the claim, were deliberately expressed and are still adhered to. As the reasons for those views were quite fully gone into at that time, it is unnecessary to repeat them at large. A few additional observations will suffice.

It was not intended then, and is not now, to question the conclusiveness, in suits for infringements of patents, of the decisions of the Commissioner on questions of fact necessary to be decided before issuing such patents, except as the statute gives specific defences in that regard. But the statutory defences are not the only defences which may be made against a patent. Where it is evident that the Commissioner, under a misconception of the law, has exceeded his authority in granting or reissuing a patent, there is no sound principle to prevent a party sued for its infringement from availing himself of the illegality, independently of any statutory permission so to do.

This is constantly done in land cases where patents have been issued which the land officers had no authority to issue, as, where the lands have been previously granted, reserved from sale, or appropriated to other uses. *Stoddard* v. *Chambers*, 2 How. 284, 318; *Easton* v. *Salisbury*, 21 How. 426; *Reichart* v. *Felps*, 6 Wall. 160; *Silver* v. *Ladd*, 7 Wall. 219; *Meader* v. *Norton*, 11 Wall. 442; *Best* v. *Polk*, 18 Wall. 112; *Morton* v. *Nebraska*, 21 Wall. 660; *Leavenworth, &c., Railroad* v. *United States*, 92 U. S. 733; *Newhall* v. *Sanger*, 92 U. S. 761.; *Sherman* v. *Buick*, 93 U. S. 209.

In cases of patents for inventions, a valid defence not given by the statute often arises where the question is, whether the thing patented amounts to a patentable invention. This being a question of law, the courts are not bound by the decision of the commissioner, although he must necessarily pass upon it. See *Brown* v. *Piper*, 91 U. S. 37; *Glue Co.* v. *Upton*, 97 U. S. 3; *Dunbar* v. *Myers*, 94 U. S. 187, 197–199; *Atlantic Works* v. *Brady*, 107 U. S. 192, 199; *Slawson* v. *Grand St.*

*Railroad Co.*, 107 U. S. 649, 652; *King* v. *Gallun*, 109 U. S. 99, 101.

In this very matter of reissued patents it has also been frequently decided that it is a good defence in a suit on such a patent to show that the Commissioner exceeded his authority in granting it. Such a defence is established by showing that the reissued patent is for a different invention from that described in the original; inasmuch as the statute declares that it must be for the same invention. *Burr* v. *Duryee*, 1 Wall. 531, 574; *Gill* v. *Wells*, 22 Wall. 1; *Collar Co.* v. *Van Dusen*, 23 Wall. 530, 560; *Wood Paper Patent*, 23 Wall. 566; and many other subsequent cases. The same defence may be established by showing from the record that there was no inadvertence, accident or mistake in drawing up the specification of the original patent; for the statute only gives a reissue when the original is defective by inadvertence, accident or mistake. Thus, in *Leggett* v. *Avery*, 101 U. S. 256, 259, the reissued patent embraced a claim which had been presented on the application for the original patent and rejected. It was apparent, therefore, that the omission of that claim in the original was not, and could not have been, the result of inadvertence, accident or mistake, but was the result of design on the part of the Commissioner and acquiescence on the part of the patentee; and so far as that claim was concerned, the reissued patent was properly held to be void. See also *James* v. *Campbell*, 104 U. S. 356, 368. The proper remedy of the patentee when a claim applied for is rejected, is an appeal, and not an application for a reissue.

Such are some of the instances in which a patent issued contrary to law is held to be void. And it is no doubt a general rule that where the Commissioner has exceeded his authority in granting or reissuing a patent, such fact furnishes a good defence to a suit brought for its infringement. There are stronger reasons for this defence against patents for inventions, which directly affect the citizen, than exist in the case of patents for land, which directly affect the government, and only indirectly the citizen.

Now, in our judgment, a patent for an invention cannot

lawfully be reissued for the mere purpose of enlarging the claim, unless there has been a clear mistake inadvertently committed in the wording of the claim, and the application for a reissue is made within a reasonably short period after the original patent was granted. The granting of such reissues after the lapse of long periods of time is an abuse of the power, and is founded on a total misconception of the law. The Commissioner of Patents has evidently proceeded, in these cases, on the view that a patent may be reissued after any lapse of time, for the purpose of making a broader claim, by merely showing that the claim might have been broader than it was, and that it was inadvertently made too narrow at the time. In this we think he has been entirely in error. Lapse of time may be of small consequence on an application for the reissue of a patent on account of a defective specification or description, or where the original claim is too broad. But there are substantial reasons, not applicable to these cases, why a claim cannot be enlarged and made broader after an undue lapse of time. The rights of the public here intervene, which are totally inconsistent with such tardy reissues; and the great opportunity and temptation to commit fraud after any considerable lapse of time, when the circumstances of the original application have passed out of mind, and the monopoly has proved to be of great value, make it imperative on the courts, as a dictate of justice and public policy, to hold the patentees strictly to the rule of reasonable diligence in making applications for this kind of reissues.

Conceding that it is for the Commissioner of Patents to determine whether the insertion of too narrow a claim arose from inadvertence, accident or mistake (unless where the matter is manifest from the record), the question whether the application for correction and reissue is or is not made within reasonable time is, in most if not all of such cases, a question which the court can determine as a question of law, by comparing the patent itself with the original patent, and, if necessary, with the record of its inception. The reason for this was fully explained in the case of *Miller* v. *The Brass Company*. The taking out of a patent which has (as the law requires it to have)

a specific claim, is notice to all the world, of the most public and solemn kind, that all those parts of the art, machine or manufacture set out and described in the specification and not embraced in such specific claim, are not claimed by the patentee,—at least not claimed in and by that patent. If he has a distinct patent for other parts, or has made application therefor, or has reserved the right to make such application, that is another matter, not affecting the patent in question. But so far as that patent is concerned, the claim actually made operates in law as a disclaimer of what is not claimed; and of all this the law charges the patentee with the fullest notice.

Then, what is the situation? The public is notified and informed by the most solemn act on the part of the patentee, that his claim to invention is for such and such an element or combination, and for nothing more. Of course, what is not claimed is public property. The presumption is, and such is generally the fact, that what is not claimed was not invented by the patentee, but was known and used before he made his invention. But, whether so or not, his own act has made it public property if it was not so before. The patent itself, as soon as it is issued, is the evidence of this. The public has the undoubted right to use, and it is to be presumed does use, what is not specifically claimed in the patent. Every day that passes after the issue of the patent adds to the strength of this right, and increases the barrier against subsequent expansion of the claim by reissue under a pretence of inadvertence and mistake. If any such inadvertence or mistake has really occurred, it is generally easily discernible by an inspection of the patent itself; and any unreasonable delay in applying to have it corrected by a surrender and reissue is a just bar to such correction. If the specification is complicated and the claim is ambiguous or involved, the patentee may be entitled to greater indulgence; and of this the court can rightfully judge in each case. No precise limit of time can be fixed and laid down for all cases. The courts will always exercise a proper liberality in favor of the patentee. But in any case, by such delay as the court may deem unnecessary and unreasonable, the right to a reissue will be regarded as having been abandoned and

lost, and the Commissioner will be held to have exceeded his authority in granting it. Whenever it is manifest from the patent itself, compared with the original patent and cognate documents of record, or from the facts developed in the case, that the Commissioner must have disregarded the rules of law by which his authority to grant a reissue in such cases is governed, the patent will be considered as void to the extent of such illegality. It is then a question of law, not a question of fact. As before stated, the case is entirely different from that of a reissue by reason of a defective specification or description, or on account of the claim being too broad. In these cases, the public interest is promoted by the change; whilst a reissue for the purpose of making a claim more broad and compre-hensive is injurious to the public, since it takes from the public the use of that which it previously enjoyed, and which the original patent acknowledged its right to enjoy. We repeat then, if a patentee has not claimed as much as he is entitled to claim, he is bound to discover the defect in reasonable time, or he loses all right to a reissue; and if the Commissioner of Patents, after the lapse of such reasonable time, undertakes to grant a reissue for the purpose of correcting the supposed mis-take, he exceeds his power, and acts under a mistaken view of the law; and the court, seeing this, has a right, and it is its duty, to declare the reissue *pro tanto* void in any suit founded upon it.

The truth is (as was shown in *Miller* v. *The Brass Com-pany*), that this class of cases, namely, reissues for the pur-pose of enlarging and expanding the claim of a patent, was not comprised within the literal terms of the law which created the power to reissue patents. But since the purpose of the statute undoubtedly was to provide that kind of relief which courts of equity have always given in cases of clear accident and mistake in the drawing up of written instruments, it may fairly be inferred that a mistake in a patent whereby the claim is made too narrow, is within the equity, if not within the words of the statute. Yet no court of equity, considering all the interests involved, would ever grant relief in such a case without due diligence and promptness on the part of the pat-

entee in seeking to have the error corrected. It is just one of those cases in which laches and unnecessary delay would be held to be a bar to such relief. And in extending the equity of the statute so as to embrace the case, the courts should not overlook or disregard the conditions on which alone courts of equity would take any action, and also on which alone the Commissioner of Patents has any power to grant a reissue.

As we have already stated, no invariable rule can be laid down as to what is reasonable time within which the patentee should seek for the correction of a claim which he considers too narrow. In *Miller* v. *The Brass Company*, by analogy to the law of public use before an application for a patent, we suggested that a delay of two years in applying for such correction should be construed equally favorable to the public. But this was a mere suggestion by the way, and was not intended to lay down any general rule. Nevertheless, the analogy is an apposite one, and we think that excuse for any longer delay than that should be made manifest by the special circumstances of the case.

In the present case there was a delay of nearly four years. The application for a reissue, though made in the name of the patentee and signed by him, was not made for his benefit, but for the benefit and apparently at the instance of his assignee, the present appellant. The specification is very plain and free from complexity, and as we have already stated, the claims in the original patent were clear and explicit. There was no ambiguity, and nothing to prevent the patentee from seeing at once, on inspecting his patent, whether his whole invention was claimed or not. We can see no possible excuse, and none has been attempted to be shown, for allowing the patent to stand the length of time it did without any attempt to have it amended. The reissue was made against law apparent on its face, and nothing is shown in the record to remove this illegality. The case is clearly within the principle laid down in *Miller* v. *The Brass Company*, and the patent must be regarded as void so far as the new and expanded claims are concerned. As this leaves only the fourth claim to be considered, and as it is clear

from the evidence in the case that the appellants did not infringe that claim, the decree of the Circuit Court must be

*Affirmed.*

MR. JUSTICE MILLER, dissenting.

In this case I avail myself of the first occasion which has fairly required it to give expression to my views in opposition to those expressed by the court in several cases in which reissues of patents have been held invalid.

The principle on which the present case is decided, and which, if not the only ground of that decision, is emphasized in the opinion as the controlling ground, is that of laches in the application for the reissue. It is quite clear from the opinion, that, if in all other respects the patentee had been entitled to the reissue of the patent on which he relies in this case, it would give him no protection, because this court is of opinion that, under the circumstances, the application for it came too late.

This proposition of the court does not grow out of any statute of limitation governing such applications, nor because the original patent, and, of course, the reissue, does not have a considerable time to run before it expires by law, but because the court, applying to the transaction as it came before the Commissioner of Patents, the equitable doctrine of laches—of improper delay—holds that, on that principle, the party came too late and the reissue is invalid. The distinction between the instrument being void and merely voidable is so well known that it can hardly be supposed to have escaped the attention of the court, and since the judgment in this case can bind no one but the parties to it, the patentee in another suit on the same patent against another party, by showing reasonable excuse for his delay, may prove his patent to be valid, and in that suit he must recover, though he fails in this.

Thus every infringer will have the right to retry, when he is sued, the question of whether the Commissioner of Patents exercised a sound discretion in allowing the surrender and reissue of the patent. Such a doctrine renders the labors of the

Patent Office, with its Commissioner and corps of trained examiners, of very little value, and subjects the final decision in favor of a patentee to the re-examination of any number of juries on the very facts which were passed upon by the officers appointed by law for the purpose of deciding the questions necessary to the validity of the patent.

The doctrine is well established that a grant by the government, within its lawful authority, evidenced by a patent under its seal and the signature of the executive, cannot be impeached collaterally. It must be recognized as valid in all courts when it is introduced as evidence of the right which it confers, and can only be avoided by a direct proceeding by way of *scire facias*, or bill in chancery to set aside the grant for some of the reasons which made its original issue a wrongful act. In such case the government which issued the patent, by its attorney-general or other proper officer, in a court of competent jurisdiction, obtains a decree setting the patent aside, whereby it is rendered of no avail against all persons interested in the matter, as well as the government.

For decisions which establish this doctrine, if there could be any doubt about it, I refer to the following cases: *United States* v. *Stone*, 2 Wall. 525; *United States* v. *Throckmorton*, 98 U. S. 61, 70; *Mowry* v. *Whitney*, 14 Wall. 434, which is the case of a patent for invention, and where the whole subject is fully discussed.

Undoubtedly there are cases of patents, with all the solemn formalities attesting their validity, which are properly rejected by the courts when offered in evidence, because they show, upon their face, that no authority existed for their issue. The power to grant the rights, which they profess to confer, did not exist. Either it did not exist at all, or it did not exist in the officers or tribunal which issued the patent. In such cases the court can see, from the face of the instrument, the nature of the grant, and the power which the law confers on the officer who issued it, that it is wholly void, and that no evidence to be now produced, or which could have been produced before that officer could authorize the grant or make it valid. Such

an instrument is void *ab initio*, is void always and everywhere, for want of power in those who made it.

. Can the present case come under this exception ?

Clearly not. The question of laches, of undue delay in making application to correct "*a mistake, accident, or inadvertence,*" by reason of which the patentee does not get the full benefit of his invention, must depend on many circumstances which cannot appear on the face of the reissued patent. No mistake can be corrected until it is discovered. The period of this discovery is always a matter of proof, which may be of the most varied character. If the discovery of the mistake was soon after the issue of the patent, and the delay defeated the right to the reissue, this was a matter into which the Patent Office should inquire. The duty to do so devolved on it, and the right to decide it necessarily followed. While the dates of the original patent and of the application for a reissue might seem to show an unreasonable delay, this appearance might have been removed by evidence which afforded a full justification for it. Very long delays have been justified by the decisions of this court when set up as objections to patents. See *Smith* v. *Goodyear Dental Vulcanite Co.*, 93 U. S. 486.

That patents for inventions were intended by Congress to have this conclusive and unimpeachable character, is manifest from the legislation on this very point. § 4920 of the Revised Statutes, which was originally enacted in 1836, sets forth five distinct defences which may be pleaded to an action for infringement of a patent right. They are as follows :

"1. That, for the purpose of deceiving the public, the description and specification filed by the patentee in the Patent Office was made to contain less than the whole truth relative to his invention or discovery, or more than is necessary to produce the desired effect ; or,

"2. That he had surreptitiously or unjustly obtained the patent for that which was in fact invented by another, who was using reasonable diligence in adapting or perfecting the same ; or,

"3. That it had been patented or described in some printed publication prior to his supposed invention or discovery thereof ; or,

"4. That he was not the original and first inventor or discov-
erer of any material and substantial part of the thing pat-
ented; or,

"5. That it had been in public use or on sale in this country
for more than two years before his application for a patent, or
had been abandoned to the public."

The statute also requires the defendant in such cases to give
the patentee notice with great particularity of the persons who
are prior inventors or have knowledge of prior use of the in-
vention, and when and by whom it has been used.

It will be observed that, while these defences go to the valid-
ity of the patent, they all resolve themselves into want of nov-
elty, or of priority of invention or discovery, except the first
and the last.

Neither laches nor fraud is here mentioned as a defence to
the patent.

Why were these five points made matter of defence by stat-
ute? And why were no others mentioned? The answers to
these two questions are obvious, and they are conclusive of the
question before us.

The answer to the first question is that these defences go to
impeach the patent, and destroy its value as evidence in that
case; and by the law as it stood then and as it stands now this
cannot be done without a special statute to authorize it.

And the reason why no other grounds for impeaching the
patent were allowed to be set up in defence was that Congress
intended that all other causes for impeaching the patent should
be prosecuted in the usual mode of *scire facias*, or bill in chan-
cery, brought by the proper law officers of the government to
set it aside and annul it.

If Congress had intended that the patent issued with all the
necessary formalities should be assailed collaterally for every
reason that might have been urged against its issue originally,
it would have said so in short terms, and not have enumerated
particular or special reasons for which it may be so attacked.

That laches is not one of these reasons is clear, and affords an
unanswerable argument that it was not intended that it should
be a ground of defence for its infringement in such actions.

The careful and studied enumeration of matters going to impeach the patent, where a suit is brought to enforce rights granted by it, is the strongest affirmation that no others are admissible for that purpose in that kind of suit.

In *United States* v. *Throckmorton* the court said, that "in so important a matter as impeaching the grants of the government under its seal, its highest law officer should be consulted, and should give the support of his name and authority to the suit."

In *Mowry* v. *Whitney,* 14 Wall. 441, it is said that a suit by an individual could only be conclusive in result as between the parties, and would leave the instrument valid as to all others, and the patentee might be subjected to innumerable vexatious suits to set aside his patent. "It would seriously impair the value of the title which the government grants after regular proceedings before officers appointed for the purpose, if the validity of the instrument by which the grant is made can be impeached by any one whose interest may be affected by it, and would tend to discredit the authority of the government in such matters."

If the principles of the opinion in the present case are sound, then in every case where an action at law is brought, the jury must sit in judgment on the action of the Commissioner of Patents, as to the existence of laches where that is alleged, and as there may be a dozen jury trials in suits against as many different parties for infringing the same patent, each jury deciding on its own impression of the evidence before it, the question of the validity of the reissue can never be settled, nor the patentee or the public know whether his patent is valid or worthless.

Such a departure from the settled rules of law as applicable to these instruments cannot be justified in a court until authorized by legislative power.

In several cases which have preceded this one, especially *Miller* v. *Brass Company,* 104 U. S. 350, where this doctrine has been stated in the opinion, other grounds were also given as the foundation of the judgment. I had hoped, when we came to a case where the question *must* be decided, my brethren would

not adopt it on full consideration. This must be my apology for any apparent acquiescence in it heretofore. I am of opinion that reissued patents are entitled to the same consideration as other patents issued by the government.