## BATE REFRIGERATING CO. *v.* EASTMAN.

*(Circuit Court, S. D. New York. June 12, 1885.)*

PATENTS FOR INVENTIONS — INFRINGEMENT — COOLING AND DISTRIBUTING APPARATUS — REISSUE NO. 7,643, CL. 5.

The fifth claim of reissued letters patent No. 7,643, issued to Moses J. Kelly, April 24, 1877, for an improvement in air cooling and distributing apparatus, when properly construed, is not infringed by the apparatus described in letters patent No. 226,281, granted to Joseph J. Coleman on April 6, 1880, for an air-cooling and refrigerating apparatus, the refrigerating effect being produced by the compression and expansion of air.

At Law.

*Dickerson & Dickerson,* for complainant.

*John R. Bennett* and *Roscoe Conkling,* for defendant.

SHIPMAN, J. This is an action at law to recover damages for the alleged infringement by the defendant, in the port of New York, of the fifth claim of reissued letters patent No. 7,643, issued to Moses J. Kelly, April 24, 1877, for an improvement in air cooling and distributing apparatus. The original patent No. 44,731, dated October 18, 1864, and antedated October 6, 1864, was assigned to the plaintiff on December 21, 1876. By written stipulation between the parties a jury was waived, and the action has been tried by the court. After the plaintiff had rested his case, and after the introduction by the defendant of two patents, and a decree or order of the circuit court for this district dismissing the bill in equity of the present plaintiffs against the present defendants praying for an injunction against the infringement of the reissued letters patent which are the subject of this action, the defendant moved that judgment be entered for the defendant upon the ground that, upon the facts as presented, the action

could not be maintained. The only question which I shall consider is whether the fifth claim, properly construed, includes the apparatus which is admitted to have been employed and used by the defendant on board an English vessel in the port of New York, between the dates stated in the complaint, in the manner stated in the written stipulation.

The patentee states in the specification of the reissue and also of the original patent that his air-cooling apparatus was "for cooling carcasses where hung to cool in slaughtering establishments; cooling halls, railroad cars, grain-bins, the holds of vessels, and other places and apartments in which it may be desired to reduce the temperature of the atmosphere by the introduction of cool or cold air." In the description of the construction and operation of the apparatus the patentee described, with particularity, two forms of chests or receptacles for ice. Certain portions of one form of one box are to be filled with ice, and the other form of box is to be kept full of ice, or nearly so. The air which enters an aperture in the lower portion of the ice-box is cooled by passing through or over the ice in the compartment. Over the ice-box are placed what are styled "common fanners," inclosed within an air-tight casing, or otherwise directly connected with a pipe which conducts the cold air from the ice-box, so that (the fanners being put in motion by a belt on a pulley, or otherwise) all the air they move is drawn through this pipe. Leading from the fanners overhead in slaughtering establishments is a large pipe, tube, or conductor. Smaller pipes lead from this tube immediately over each row of carcasses, and in the small pipes are openings from which currents of air issue upon each carcass, as may be desired. The ice being arranged in either of the two described ice-boxes, or in a described ice-house, in the manner detailed in the patent, "and the fanners put in rapid motion, a portion of the air is rapidly cooled and forced through the pipe, P, (the pipe connected with the fanners,) into any place or apartment to be cooled, and there distributed through and from a sufficient number of small perforated tubes," so as to properly equalize or equally distribute the air thus introduced. There are five claims of the reissued patent. I will only read the first and fifth.

"1. In an air-cooler or apparatus for cooling carcasses, etc., the combination of a fan-blower, or its equivalent, an ice-chest, or equivalent, and one or more pipes or conduits, which equally distribute the air within the place or apartment to be cooled, substantially as and for the purpose herein set forth."

"5. In an air-cooler or apparatus for cooling carcasses, etc., the combination of the fan-blower or fanners, F, the system of tubes T, tt, etc., and the ice-chest or depository in either of said forms, as and for the purpose shown and represented."

The fifth claim is substantially like the single claim of the original patent. The apparatus which is claimed to infringe the Kelly patent is described in letters patent to Joseph J. Coleman, No. 226,281,

dated April 6, 1880, for an air-cooling and refrigerating apparatus, the refrigerating effect being produced by the compression and expansion of air. The following description of the apparatus is, in general, the description contained in the specification, but is much abbreviated. The refrigerating chamber is between the decks of a vessel, and is for the reception of meats. There are two air-compressing cylinders, the piston-rods of which are connected to the pistons of the two expansion cylinders. The compressed air from the compression cylinder passes up through a cylindrical vessel or tower, in which it is subjected to the cooling action of sprays of cold water, and thence the compressed and cooled air passes to a similar cylindrical vessel, where it is deprived of most of its moisture by passing in contact with a series of perforated plates. The partially dried compressed air passes through a pipe to a second drying device, composed of a number of horizontal tubes. The air, in its passage through these tubes, is deprived of its remaining moisture, and passes through a pipe to the expansion cylinder. The expanded air from the exhaust ports of these cylinders enters chambers so that any moisture which may remain will be converted into snow, and deposited in said chambers. The expanded air then passes into a main pipe, and thereafter into pipes which extend up the sides of the chamber, and then horizontally along the beams; the air escaping from the open ends of the pipes, which are of different lengths, in order to equalize the distribution of the cold dry air throughout the refrigerating chamber. It will be seen that in the infringing apparatus the air is not chilled by contact with ice, and that it contains no chest or receptacle for ice in the ordinary meaning of those terms.

The Kelly reissued patent was under careful examination, in 1881, by Judge NIXON in the suit of the present plaintiff against Toffey, but as the infringing mechanism in that case contained an ice-chest filled with ice, by contact with which the air was cooled, the important question in this case, and which relates to the construction of the fifth claim, was not considered by the court. The same facts which are here presented were under discussion before Judge BLATCHFORD, in 1881, upon a motion for preliminary injunction in a suit in equity between the present parties. It was held that the defendants infringed the first and second claims of the Kelly reissue. Since that time, in view of the effect of the reiterated decisions of the supreme court, which commenced in the year 1882, upon the subject of reissues, it is now conceded that these claims are undue expansions of the original patent, and the contention is narrowed to the claim concerning which testimony was not presented to Judge BLATCHFORD, and which he did not, therefore, pass upon. And it is conceded that the fifth claim is to receive the same construction which it should properly receive if the original patent had never been surrendered.

In examining this claim, by the aid of the specification and the state of the art in 1864, it is apparent that the patentee's invention

included the cooling of carcasses in slaughtering establishments; the cooling of halls, holds of vessels, and other apartments in which it might be desired to reduce the temperature of the atmosphere by the introduction of cold air; and that this cooling effect was produced by the introduction and distribution of a sufficient quantity of cool or cold air through such a number of perforated tubes that the air then introduced could be properly equalized, or that the temperature of the apartment be made equable. He desired to cool, not only the holds of vessels, but also halls or other apartments to which external air was admitted by doors and windows. The principal thing which he had in mind was the cooling of recently slaughtered carcasses of animals. He did not, however, confine himself to that single object, but included the cooling of any apartment, and this was to be done by equalizing, throughout the place to be cooled, the air introduced or distributed through his system of tubes. The only described or suggested manner by which the cooling of the air that was to be introduced into the apartment was effected was by compelling it to pass over and through ice in an ice-chest, by the aid of a blower or fanner. He did not, apparently, intend to include, and did not suppose that his invention was broad enough to include, any method of cooling air which existed in the use of scientific means operating in a very different manner from the simple mechanical appliances which he had adopted. He therefore did not suggest the possible use of any other means, but asked for and obtained a patent for the combination of the fanners, F, the system of tubes, T, tt, and the ice-chest or depository in either of the forms which he had described. His claim was not so rigid as to prevent ordinary mechanical modifications of the apertures, which might be on one side or the other side, or on the end of the small tubes; or mechanical modifications of the shape and length of the pipes themselves. His fanner would include mechanical modifications or equivalent devices by which motion is imparted to air. There might be various forms of chest or depository besides the simple ones which his ingenuity had suggested; but the language of his specification does not indicate the idea that the invention, as it lay in his mind, was so far-reaching as to include any and all means of cooling air which the scientific mind had then made known.

Although, as a rule, a patent for a combination includes the then known equivalents for the respective elements of the combination, yet I cannot conceive that the claim of the original Kelly patent can be properly construed to include, as an equivalent or substitute for the described ice-chest, any and all methods of accomplishing the result of chilling air which were known at the date of the patent; the specification or the claim not having given a suggestion of an invention of such general character. It is not necessary to inquire whether the invention of Kelly could be generalized, or was in fact broad enough to have justified him in asking for, when he made his original application in 1864, and in obtaining, a patent for any ice depository or its

equivalent,—meaning by the term "equivalent" any then known method or apparatus for cooling air and removing moisture, which might consist of cylinders for compressing and expanding air, and condensing coil and air-pumps; and whether, therefore, under the theory of reissues which prevailed until a comparatively recent date, courts were not justified in construing a claim in a reissue for any ice-chest to include such a substitute; for the original patent shows that the application which he did make and which he intended to make was for a patent of a much narrower character. He described the invention and only the invention which is contained in the claim, and which, so far as it relates to the ice receptacle, was the ice-chest or depository in either of the described forms,—meaning a chest for the reception of ice as the cooling agent. His claim aptly describes the same invention which was described in the specification, and an invention "complete in itself." The omission to make a broader claim, not being the result of inadvertence, accident, or mistake, as those terms are now defined, could not be corrected by a reissue, and cannot now be corrected by expanding the original claim so as to include that which makes the new claim of the reissue invalid. If, as is declared in *Mahn* v. *Harwood*, 112 U. S. 354, S. C. 5 Sup. Ct. Rep. 174, "a patent for an invention cannot be lawfully reissued for the mere purpose of enlarging the claim, unless there has been a clear mistake, inadvertently omitted, in the wording of the claim," such original claim cannot be enlarged by construction so as to include what was intentionally, and not inadvertently and by mistake, omitted.

It is unnecessary, under this construction of the fifth claim, even if an examination of the testimony of Mr. Brevoort and Prof. Morton was proper upon this motion, to examine the question whether, if the ice-chest, in either of its forms, meant any ice-chest, that term would include any receptacle or mechanism in and by means of which air was chilled by any mechanical or chemical instrumentality known at the date of the patent, or to further consider whether the Coleman mechanism was known at the date of the original Kelly patent in any other than the broad sense that compression and expansion cylinders were known, by means of which, and the force-pumps connected therewith, air was chilled; or other important questions, which have received, as they deserve, the earnest attention of the counsel in the case.

The motion is granted, and let judgment be entered for the defendant.