**HAWIE MFG. CO. v. HATHEWAY MFG. CO. et al.**

District Court, D. Connecticut. July 25, 1928.

No. 1895.

1. Patents ⊂⇒290(2)—Corporate defendant, manufacturing part of infringing article, and individual defendants, making up and selling finished infringing product, were proper parties in infringement suit.

Corporate defendant, manufacturing and selling part of infringing article to individual defendants, who in turn made up the finished product, which they sold to their customers, were proper parties in patent infringement suit.

2. Patents ⊂⇒136—Invalidity of patent, arising from inadvertence, accident, or mistake, may be remedied by reissue, where reissue does not add to or broaden claims.

Invalidity of original patent, arising by inadvertence, accident, or mistake, without fraudulent or deceptive intention, may be remedied by reissue, where reissue does not add to or broaden the claims.

3. Patents ⊂⇒141(2)—Amended specification, which does not enlarge scope of patent by extending original claims, is within statute permitting reissue.

If, on reissue, the amended specification does not enlarge the scope of the patent, by extending the claim, so as to include invention not included in original patent, rights of public are not prejudiced, and case is within statute permitting reissue, where original patent is invalid.

4. Patents ⊂⇒136—Patentee, on reissue, may explain operation of element shown in original drawing.

Patentee may, on reissue, explain operation of element shown in the original drawing, without introducing new matter, which statute forbids.

5. Patents ⊂⇒138(2)—Defense of intervening rights held not available in patent infringement suit, to invalidate reissue claims which were narrower than original claims.

Defense of intervening rights of defendants in patent infringement suit held not available, to invalidate reissue, where claims of reissue were narrower than claims asserted in original patent.

6. Patents ⊂⇒328—Reissue patent No. 15,982, for improvement in rustless buckle, held valid, not anticipated, and infringed.

Reissue patent No. 15,982, for rustless back buckle, held not void as extending or adding to claims of original patent, and not void on ground of anticipation and want of novelty, and claims thereof were infringed.

7. Patents ⊂⇒328—No. 1,497,273, claims 2, 3, 4, 6, 7, for rustless back buckle, held valid and infringed.

Patent No. 1,497,273, claims 2, 3, 4, 6, and 7, for buckle of rustless back type, held valid, not anticipated, and infringed.

In Equity. Patent infringement suit by the Hawie Manufacturing Company against the Hatheway Manufacturing Company and others. Decree for plaintiff, for an injunction, reference, accounting, and costs.

C. A. L. Massie, of New York City, and Christian M. Newman, of Bridgeport, Conn., for plaintiff.

Merrell E. Clark, of New York City, for defendants.

THOMAS, District Judge. This is a suit for alleged infringement of all four claims of reissue patent No. 15,982, issued January 13, 1925, which is a reissue of original patent No. 1,426,634, of August 22, 1922, for improvements in rustless buckles. The plaintiff also charges infringement of claims 2, 3, 4, 6, and 7 of letters patent No. 1,497,273, issued June 10, 1924, for improvements in buckles. Both patents were issued to Michael Hawie, and by him assigned to the plaintiff corporation.

[1] The Hatheway Manufacturing Company, the corporation defendant, manufactures and sells metallic buckles like the metal portion of Plaintiff's Exhibits 5 and 6 (defendants' devices) to its regular customers, and among them are the individual defendants named in this suit, and they in turn make them up into

a completed article, by webbing the buckles in the manner disclosed by these exhibits, and then sell the webbed buckle as a finished article to their customers. Consequently both the corporation and the individual defendants are proper parties to this suit.

It is alleged that Exhibit 5 infringes all of the claims of the reissue patent, and that Exhibit 6 infringes claims 2, 3, 4, 6, and 7 of patent No. 1,497,273. As the complaint sets forth two separate and distinct causes of action, the two patents must be treated separately.

### The Reissue Patent.

This invention relates to a buckle of the type known as "rustless back" buckle. The term "rustless" means that the webbing is strung into the buckle, so as to overlie and cover its back face, and thus prevent the metal of the buckle from coming in contact with the flesh of the wearer, and prevent the moisture of the body from coming in contact with the buckle.

The buckle was designed to provide a simple and practical article, and to be effective without the necessity of stitching the webbing into the buckle, and is so constructed as to enable an assembler to speedily insert the webbing, and with especial reference to an economical use of the webbing.

The patented buckle consists of two sheet metal members, a frame member and a clamping member, in combination with a piece of elastic fabric or webbing. The frame member includes a back having forwardly projected ears and a series of spaced apart teeth, struck up from said back intermediate its top and bottom edges, and extending upwardly and forwardly, and leaving a stop integral with said back. This stop is made up of and consists of the portions of the sheet metal between the teeth, and is integral with the rest of the back. The lever member is provided with pintles at either end, which are journaled in perforations in the ears of the frame member, and it consists of an operating arm and a clamping arm; the latter being arranged at an angle to the operating arm and having a series of teeth, which are arranged alternately with respect to the lever teeth of the frame member, and adapted, in the operation of the lever, to pass between and clear of the anchor teeth of the frame member.

A piece of elastic fabric or webbing is fixed to the frame member, by first inserting one end of the webbing from above; that is to say, through the free space between the frame member and lever member into the angular space between the anchor teeth and the back of the frame member. The anchor teeth are then forced against the webbing, thereby causing portions of the webbing to protrude into the openings created by forming the anchor teeth, thus gripping the webbing between the straight-line edges of the anchor teeth and the corresponding straight-line edges of the openings in the back member. The webbing thus anchored is then extended upwardly along the front face of the back member—is then passed over the upper edge of the back, and folded down upon the upper edge, so as to cover the rear face of said back, continuing downwardly as one "reach" of a loop. The other, or "running, end" of this loop is then passed upwardly along the front face of the teeth of the frame member and the exposed portions of the fastened reach of the webbing, and thence upwardly between the back and the lever member, whereby, upon operating the lever member, the lever teeth act upon that transverse portion of the "running reach" which overlies the teeth of the frame member and the fastened end of the webbing.

The stop mentioned in the specification prevents the end of the webbing, when inserted, from protruding through the rear of the frame member. It also coacts with the teeth of the frame member in clamping the web, and holds it securely with no liability of working free. Furthermore, the stop strengthens the structure generally, and prevents the two edge portions of the frame member from spreading. It also renders it easy for the operator, when inserting the elastic fabric or webbing with the end which is to be anchored to the frame member, to place the same quickly and securely in its seat.

It is urged by the defendants that the reissue patent is void because: (1) It is not for the same invention as the original patent; (2) it is invalid because of intervening rights; (3) the claims are void for anticipation and lack of invention.

[2, 3] First. The only difference between the claims of the original patent and those of the reissue is that the latter include an added element consisting of the stop or stops (element 10′, shown on the reissue drawing) formed between the teeth 19. The reissue specification was enlarged by describing these stops, their functions and advantages.

To be the subject of a reissue under the statute the original patent must be invalid, or it must at least be inoperative. Obviously, invalidity may arise from insufficient description, and invalidity, if it arose by inadvertence, accident, or mistake, and without

any fraudulent or deceptive intention, may undoubtedly be remedied by a reissue, where the reissue does not add to nor broaden the claims. Hart & Hegeman Mfg. Co. v. Anchor Electric Co. (C. C. A.) 92 F. 658.

It appears that the original patent was surrendered as inoperative, because the specification was defective and insufficient. By the reissue the invention was not broadened. The drawings are the same. The defect or insufficiency of the specification of the original patent consisted in the failure of the specification and claims to properly show that the invention resided in the specific construction of the frame member, wherein "the integral portion of the frame left between the teeth generally strengthens the structure rendering it more rigid and prevents the two edge portions from spreading and particularly serves as a stop which prevents the end of the web, when inserted, from protruding through the opening and also coacts with the teeth in clamping the web and maintaining it firmly secured."

In his petition for reissue the patentee alleged that the application was filed for the purpose of correcting the errors, inaccuracies, and insufficiencies in the specification and claims of the original. He also alleged that the errors were only discovered by counsel when the first suit was brought, and that shortly after this discovery the petition for reissue was filed. Regarding this subject-matter the record shows that the original patent, No. 1,426,634, issued August 22, 1922, and that suit was brought in this court on that patent by the Hawie Manufacturing Company against the Hatheway Manufacturing Company, one of the defendants in this suit, by bill filed June 2, 1924, to which answer was made and filed July 22, 1924. Subsequently notice was served on defendant that on November 7, 1924, plaintiff would present to the court an order for discontinuance of that suit. Hearing was had, and on November 10, 1924, it was ordered that the suit be discontinued without prejudice to its renewal.

The petition for reissue is dated November 12, 1924, and filed in the Patent Office November 17, 1924. On November 24, 1924, claims 1 to 4 of the reissue patent were allowed by the Examiner, and after notice that claim 5 had been rejected the patentee canceled that claim, and on January 13, 1925, the patent issued. The instant suit was filed April 6, 1927. It is true, as is asserted by counsel, that the general purpose of the statute providing for reissues was to correct mistakes and errors, and not to enable the inventor to extend his monopoly to cover progress by others in his art. But it is equally true that, if the amended specification does not enlarge the scope of the patent, by extending the claim so as to cover more than was embraced in the original, and thus cause the patent to include an invention not in the original, the rights of the public are not thereby prejudiced, and the case is within the remedy intended by the statute.

The changes made in the amended specification and claims did not enlarge the scope of the patent, or describe a different invention, but only supplied a deficiency in the original description, by describing with more particularity and exactness the construction of the device, and the means to be employed to produce the desired result. In Crown Cork & Seal Co. v. Aluminum Stopper Co., 108 F. 845, Judge Brawley, speaking for the Circuit Court of Appeals for the Fourth Circuit, after collating many of the leading cases, with extensive quotations from some of them, regarding the general rules respecting reissues, concluded as follows, on page 858:

"Where there has been an expansion of the patent to describe inventions substantially different from the original, covering nebulous combinations not exhibited therein, and where there has been protracted and unreasonable delay in face of the manufacture of articles not substantially covered by the original invention, the reissue has been held void; but the courts, recognizing the fact that the ordinary inventor is not usually skilled in technical rules of construction, and is apt to suppose that his claims protect him in the essential elements mentioned in them, and that these claims and specifications are usually drawn by men who are strangers to and ignorant of the art within which they lie, and that even skilled solicitors are not infallible in framing technical documents, have sanctioned reissues which permit the framing of claims adequate to secure the full benefits of the inventions designed to be protected by the patent laws."

See, also, Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783; Mahn v. Harwood, 112 U. S. 354, 5 S. Ct. 174, 28 L. Ed. 665; Topliff v. Topliff, 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658; Parker & Whipple Co. v. Yale Clock Co., 123 U. S. 87, 8 S. Ct. 38, 31 L. Ed. 100.

Reissue patents, predicated upon facts such as are here presented, are indeed particularly consistent with the policy of the patent law, because they improve the information regarding an invention which the public can derive from a patent, and thus in-

crease the benefit which the public will enjoy after the patent has expired. There appears to be no reason why the remedy of reissue may not be employed in a case of this kind, particularly when all that the patentee did was to enlarge his specification, to clearly set forth his real invention and to restrict the claims to the real invention. The patentee is thus given an opportunity to make valid and operative that which was before invalid and inoperative. Of course, new matter cannot be inserted, nor can the scope of the invention be enlarged.

[4] Whether a reissue patent is for the same invention as that embodied in the original patent, or for a different one, is a question to be determined by a comparison of the two documents. It clearly appears, from an inspection of the drawings of the two patents here under consideration, that nothing new was added to the drawing of the reissue patent, and that in the reissue specification the operation of certain elements was explained, which in the original was omitted. Both drawings fully support these conclusions. The inventions of the two patents are therefore identical. It is not new matter, within the meaning of the statute, to explain, in a reissue, the operation of an element which was shown in the original drawing. The change made in the claims of the reissue was not a broadening, but a narrowing, of them and under the authority of Eames v. Andrews, 122 U. S. 40, 7 S. Ct. 1073, 30 L. Ed. 1064, the granting of the reissue some two years after the original was proper. Specialty Machine Co. v. Ashcroft Mfg. Co. (C. C. A.) 213 F. 35.

[5] Second. The defense of intervening rights is based on the fact that the corporation defendant was manufacturing the buckle herein complained of before the reissue application was filed. It is claimed that defendants' reliance upon the invalidity of the original patent constitutes intervening rights sufficient to invalidate the reissue in suit; but I am of the opinion that, inasmuch as the reissue claims are narrower than the original claims, the defendants have not made out a case of intervening rights, because the situation in the case at bar is like the situation in Babcock & Wilcox Co. v. Springfield Boiler Co., 16 F.(2d) 964, where the Circuit Court of Appeals for the Second Circuit reversed a decree of the court below, which had sustained the defense of intervening rights against a reissue. Judge Manton, speaking for the court, said on page 970:

"If the patentee had broadened his claim after the appellees had spent time and money on the boiler, which did not infringe the claims of the original patent, then the appellees would make out a case of intervening rights."

See, also, Eames v. Andrews, 122 U. S. 40, 7 S. Ct. 1073, 30 L. Ed. 1064, supra.

The case here is unlike the situation disclosed in the cases cited and relied upon by defendant, because the defendant's buckles like Exhibit 5 were covered by the Hawie original claims and those claims, as already noted, have been narrowed, not broadened.

[6] Third. During the trial, the corporation defendant produced four metal buckles, Defendants' Exhibits I, J, K, and L, manufactured in 1912 or early in 1913, which was more than two years prior to the filing date of the application which resulted in the original patent on which the reissue was obtained. An examination of these buckles clearly shows that they do not have any "stop" in combination with the back, as called for in the reissue patent, so that they cannot be held to anticipate the claims of the patent in suit.

The prior patents cited against these claims are no more pertinent than Defendants' Exhibits I, J, K, and L, because, in order to meet the claims, several of them would have to be combined, and even at that the "stop" feature would be missing. If there was any doubt in my mind as to the patentability of the invention, it would be resolved by the practical and commercial success of the improvements in its favor. And, even if it be conceded that the individual elements composing the combination are to be found in the prior art, yet, to make the selection of these parts from the prior art and to combine them, as the patentee did, so as to produce a buckle which is at the same time simple, compact, effective, useful, easy to assemble, and where webbing material is saved, required more than ordinary mechanical skill. It required invention.

### Infringement.

It seems that the bone of contention is the "stop" or "stops" integral with the back of the frame member of the buckle. There are some minor questions raised, such as the arrangement of the clamping arm, teeth with respect to the teeth of the frame, and the number of the teeth on the frame, but these may be dismissed, as even a casual examination of Plaintiff's Exhibit 5 clearly shows that these questions are without merit.

As to the "stop" feature, it will be observed that Plaintiff's Exhibit 5 embodies a bridge piece made integral with the back of

the frame member, which has all the functions of and operates in exactly the same manner as the "stop" of the buckle illustrated in the patent in suit. This being the case, it must be held that claims 1, 2, and 4 of the reissue patent are infringed by Plaintiff's Exhibit 5. Even claim 3 is held to be infringed, notwithstanding the fact that it calls for more than one stop, as it is obvious that one cannot escape infringement by employing a single stop, instead of a plurality of stops, if such single stop performs the function of a plurality of stops called for in a claim. I therefore conclude that all four claims of the reissue patent, No. 15,982, are valid and infringed.

### Patent No. 1,497,273.

[7] This patent also describes a buckle of the "rustless back" type. The objects of the invention, as set forth by the patentee in his specification, are briefly: (1) To provide a two-part buckle, which will be simple in construction, effectual in operation, and which will present a smooth surface, free from any sharp or rough projections; (2) to provide a buckle which will be relatively flat and thin; (3) to provide means by which the web may be securely fastened without stitching, thus saving material; (4) to provide a two-piece buckle, in which each piece will be formed from a single metal stamping; (5) to provide an improved method of forming and assembling the buckle, resulting in economy of manufacture, and adapted to be used on both suspenders and hose supporters.

The buckle, as described in this patent, comprises a sheet metal frame member and a lever member. The frame member includes a back, having a series of teeth cut and disposed forward from said back, for the attachment of the end of a piece of webbing. The frame member furthermore includes side portions extending above said back, to form a slot, and being forwardly offset from said back. Said lever member is hinged on said bar, and includes an operating arm and a clamping arm. This clamping arm is adapted to swing through said slot, and to co-operate with the top edge of the back, to engage and clamp the web. The web is disposed on the buckle in the same manner as the web on the buckle of the reissue patent.

This buckle seems to embody all of the merits of the one described in the reissue patent, and, in addition, it can receive a webbing of any thickness. Furthermore, it presents no edge and no pintle, or other projection, and therefore it is not liable to tear the wearer's undergarments, or bruise or injure the flesh. Moreover, when assembled for use, it is far thinner than the assembled buckle of the reissue patent, and is far thinner than all other prior "rustless" clamp buckles.

It is admitted that all of the claims sued upon, if valid, are infringed by the corporation defendant's buckle, Plaintiff's Exhibit 6. The validity of this patent, however, is denied, in view of the prior patents, particularly the patent to Goerdes, No. 897,734, issued September 1, 1908, and the patent to Peller, No. 847,811, issued March 19, 1907.

The Peller patent discloses a buckle which lacks means made integral therewith for clamping the end of the webbing thereto. Both the drawing and the specification of this patent clearly disclose a buckle having one end of the webbing fixed to it by a line of stitches. In addition, it is to be noted that the buckle does not include an integral pivotal bar on the frame member. Consequently the disclosure of this patent does not anticipate the claims of the patent in suit.

The Goerdes construction comes considerably nearer the device claimed in the patent in suit, but I am constrained to hold that it does not anticipate the claims in issue, because it does not embody teeth cut and disposed forwardly from the back of the frame member, for the attachment of the end of a piece of webbing. True, the Goerdes patent shows and describes teeth, but these are not formed on the back plate of the buckle, and do not extend forwardly from said back; nor do they serve, in themselves, to attach one end of a web piece to the frame member. It is clear, from the Goerdes specification, that the end of the webbing is clamped to the back by the flange 6, as shown in Figures 1, 2, 3, and 5, which is forced against the back after the webbing has been inserted, and that the teeth 7 on said flange, at the best, aid only the web-fixing function of the clamp.

All other prior patents have less bearing on the question than the Goerdes patent, so that discussion of them is unnecessary. For the reasons given, it must be held that claims 2, 3, 4, 6, and 7 of patent No. 1,497,273 are valid and infringed.

Plaintiff is therefore entitled to the usual decree for an injunction, reference, accounting, and costs.