FERNANDA MISANI, PLAINTIFF, v. ORTHO PHARMACEUTI-
CAL CORP., A NEW JERSEY CORPORATION, *ET AL.*,
DEFENDANTS.

Argued April 12, 1965—Decided June 1, 1965.

Mrs. Fernanda Misani (Fiordalisi), plaintiff, argued the cause *pro se.*

Mr. *Clyde A. Szuch* argued the cause for defendants other than Johnson & Johnson and Robert W. Johnson (*Messrs. Pitney, Hardin & Kipp,* attorneys; Mr. *Alfred I. Manson, Jr.,* of counsel; Mr. *Clyde A. Szuch,* on the brief).

Mr. *Stanley C. Smoyer* argued the cause for defendants Johnson & Johnson and Robert W. Johnson.

PER CURIAM. The trial court dismissed the plaintiff's action as against some of the defendants and the jury returned a general verdict in favor of the remaining defendants. On appeal, the Appellate Division ordered a new trial as to the defendants Ortho, Oroshnik and Johnson & Johnson. See 83 *N. J. Super.* 1 (1964). Thereafter, we granted cross-petitions for certification. 43 *N. J.* 264 (1964).

The plaintiff was employed by Ortho in January 1955 after she had responded to an advertisement seeking an organic chemist to perform "research in synthetic medicinal chemistry" of "basic character." Shortly thereafter she signed an agreement which assigned to Ortho all of her rights in inventions, improvements and ideas which she might make or conceive during her employment. The Appellate Division held that this was a valid and binding agreement and that under its terms Ortho owned outright any inventions made or conceived by the plaintiff while in its employ and was free to use or discard them "or to patent them or scrap them, wholly or partly, at its unfettered will." 83 *N. J. Super.,* at *pp.* 12–13. We agree with this holding. See *Patent & Licensing Corp. v. Olsen,* 188 *F. 2d* 522, 525 (2 *Cir.* 1951); *Paley v. Du Pont Rayon Co.,* 71 *F. 2d* 856, 858 (7 *Cir.* 1934); *Goodyear Tire & Rubber Co. v. Miller,* 22 *F. 2d* 353, 355 (9 *Cir.* 1927); see also *Universal Winding Co. v. Clarke,* 108 *F. Supp.* 329 (*D. Conn.* 1952); *Restatement (Second), Agency* § 397, comment a (1958).

■ The plaintiff continued as an employee of Ortho until April 25, 1956 on which date her employment was terminated. In 1957 she instituted an action at law against Ortho and others claiming that her employment was terminable only for cause, economic necessity or general incapacity and asserting charges of various nature. After a trial before Judge Barger sitting without a jury, her action was dismissed. On appeal, the dismissal was sustained by the Appellate Division in an opinion which has not been published in the reports and we denied certification. 38 *N. J.* 304 (1962). Although the plaintiff has sought to reassert her claim that her employment was wrongfully terminated, the Appellate Division in the present proceeding properly held that she was barred from doing so. See 83 *N. J. Super.*, at *p.* 13. Under settled principles of *res judicata,* all of the matters which were decided adversely to her by Judge Barger are now foreclosed to her. See *Washington Tp. v. Gould,* 39 *N. J.* 527, 533 (1963); *New Jersey Highway Authority v. Renner,* 18 *N. J.* 485, 493 (1955).

■ In 1959 Ortho obtained patent No. 2,878,263 on compound 4-methyl-4-phenyl-5-pyrazolone. This patent named William Oroshnik as inventor and assignor to Ortho. Oroshnik was the plaintiff's supervisor while she was in Ortho's employ. He testified that he had conceived the idea for the pyrazolone compound and had directed the plaintiff to make it; he acknowledged that she had worked out the details of the process but that this was what he would expect of any senior chemist functioning under his direction and possessing basic chemical know-how. See 83 *N. J. Super.*, at *p.* 11. The plaintiff testified that the idea was hers and she contends that, notwithstanding her transfer of ownership to Ortho, she was entitled to be named as inventor and may assert a tort claim grounded on the naming of Oroshnik rather than her. During the trial, the plaintiff conceded that the patent issued on the compound *per se* was invalid (83 *N. J. Super.*, at *p.* 17); she acknowledged that the patent on the compound had been anticipated by the *Beilstein* reference (83

*N. J. Super.*, at *p.* 16) and contended, however, that if Ortho had broadened its application so as to include claims to the process in making the compound and to the use of the compound, it could have obtained a valid patent. But Ortho was under no obligation to broaden its claims beyond its claim to the compound itself and it unequivocally asserts before us, as it did before the lower courts, that patent No. 2,878,263 on the compound itself is invalid. Although the plaintiff now seeks before us to withdraw the concession below on the basis of which the trial was conducted, and to advance the contention that the patent on the compound *per se* is not invalid, we consider that she is in no just position to do so. See *State v. Atlantic City Electric Co.*, 23 *N. J.* 259, 264 (1957); *Gebhardt v. Public Service Coord. Transport*, 48 *N. J. Super.* 173, 182 (*App. Div.* 1957), certif. denied 25 *N. J.* 540 (1958). See also *Journeymen Barbers, etc., Local 687 v. Pollino*, 22 *N. J.* 389, 395 (1956); *Beckmann v. Township of Teaneck*, 6 *N. J.* 530, 537 (1951).

In 1963 the plaintiff herself obtained patent No. 3,079,397 on the process and in 1965 she obtained patent No. 3,166,475 on the use or "method for relieving convulsions." During the trial she introduced no substantial testimony to indicate that she had suffered any special damage from the omission of her name and the inclusion of Oroshnik's name in patent No. 2,878,263. *Cf. Prosser, Torts* § 122 (*3d ed.* 1964); 1 *Harper & James, Torts* §§ 6.1, 6.4 (1956). And in the light of the whole record including the trial court's charge, we believe that the jury's verdict may fairly be read as evidencing its finding that there had been no lack of good faith in connection with the application for the patent and that, as between the plaintiff and Oroshnik, the latter rather than the former conceived the idea for the compound. Notwithstanding the afore-mentioned considerations pointing against her asserted claim for damages, the Appellate Division concluded that the plaintiff was entitled to a new trial. In reaching this conclusion, it expressed the view that the representation in the patent of Oroshnik as inventor is to be taken as extending to

the process and use as well as to the compound itself (83 *N. J. Super.*, at *p.* 24); we are satisfied that that view was erroneous and that the ensuing grant of a new trial to the plaintiff was equally erroneous.

While the Appellate Division soundly found on the record before it that the plaintiff could not sustain any claim for damages insofar as inventorship credit for the compound itself was concerned (83 *N. J. Super.*, at *p.* 17), it proceeded to set aside the jury's verdict on the finding that there had been erroneous instruction concerning patentability of the process as distinct from the compound (83 *N. J. Super.*, at *pp.* 20–22) and erroneous failure to instruct concerning patentability of a novel use of the compound (83 *N. J. Super.*, at *pp.* 24–25). But those matters were not material and caused no prejudice in the case at hand unless there was actually an actionable misrepresentation that Oroshnik rather than the plaintiff was the inventor insofar as process and use were concerned. The Appellate Division in effect made such a finding when it stated that although the patent issued to Ortho in the name of Oroshnik as inventor admittedly claimed only the compound, it also published "the process and the idea of treating convulsions with the compound, thereby imputing all to his inventorship." 83 *N. J. Super.*, at *p.* 14; see also 83 *N. J. Super.*, at *p.* 24. Nothing in the record before us affirmatively supports any such imputation and the infringement cases, while not controlling here, contain much judicial language to indicate that no representation of inventorship may fairly be said to attach to matters of process and use set forth in the specification but not in the patent claim itself. See 35 *U. S. C. A.* § 112 (1954); *Brown v. Guild*, 23 *Wall.* 181, 224–225, 90 *U. S.* 181, 224–225, 23 *L. Ed.* 161, 170 (1874); *Mahn v. Harwood*, 112 *U. S.* 354, 360–361, 5 *S. Ct.* 174, 28 *L. Ed.* 665, 668 (1884); *Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 *U. S.* 502, 510, 37 *S. Ct.* 416, 61 *L. Ed.* 871, 876 (1917); *General Electric Co. v. Wabash Appliance Corp.*, 304 *U. S.* 364, 368–369, 52 *S. Ct.* 899, 82 *L. Ed.* 1402, 1405 (1938); *Graver*

*Tank & Mfg. Co. v. Linde Air Prod. Co.,* 336 *U. S.* 271, 277, 69 *S. Ct.* 535, 93 *L. Ed.* 672, 677–678 (1949), aff'd on rehearing, 339 *U. S.* 605, 70 *S. Ct.* 854, 94 *L. Ed.* 1097 (1950). In any event, the asserted tort claim grounded on an alleged misrepresentation depriving inventorship credit as to process and use, appears to be a relatively novel one in the law, and while we may be prepared to recognize such a claim where the circumstances justly call for it, we are not prepared to recognize it where, as here, the reliance is placed, not on any express misrepresentation of inventorship as to process and use, but on a supposed implication thereof from a patent claim which was carefully limited to the compound itself and was conceded throughout the trial to be invalid as such.

In *Mahn v. Harwood, supra,* the Court pointed out that in taking out a patent there must be a specific claim and that matters set forth in the specification but not embraced in the specific claim "are not claimed by the patentee, at least, not claimed in and by that patent"; in the course of his opinion for the Court, Justice Bradley had this to say:

"The public is notified and informed, by the most solemn act on the part of the patentee, that his claim to invention is for such and such an element or combination and for nothing more. Of course, what is not claimed is public property. The presumption is, and such is generally the fact, that what is not claimed was not invented by the patentee, but was known and used before he made his invention. But, whether so or not, his own act has made it public property, if it was not so before. The patent itself, as soon as it is issued, is the evidence of this. The public has the undoubted right to use and it is to be presumed does use, what is not specifically claimed in the patent." 112 *U. S.*, at p. 361, 5 *S. Ct.*, at p. 178, 28 *L. Ed.*, at p. 668

In *Straussler v. United States,* 290 *F. 2d* 827 (*Ct. Cl.* 1961), the court referred to the distinction between the specification and the claim and stressed the great importance of the claim as describing for the world "the area of the invention beyond which no one may go without trespassing"; it pointed out that people naturally rely on the wording of claims and "are also entitled to rely on language deliberately excluded from the claims because this tends to indicate what

the inventor has agreed his invention is not." 290 *F*. 2*d,* at *p.* 831. Patent No. 2,878,263 fairly evidences on its face that no inventive claim was made on Oroshnik's behalf beyond the compound itself. Thus the opening paragraph states that the invention "relates to 4-methyl-4-phenyl-5-pyrazolone" and that "the novel compound" possesses particular value as an anticonvulsant and is useful in the treatment of epilepsy. Still later the statement is made that the object of the invention is to provide "a new compound" which has a high protective index and is nontoxic in use over a long period of time, and that another object of the invention is to provide "a new compound" for use in the treatment of epilepsy. The concluding portion explicitly states that "What is claimed is: The compound 4-methyl-4-phenyl-5-pyrazolone."

We have considered the many contentions made by the plaintiff in her briefs and at oral argument and have concluded that none of them warrants appellate disturbance of the trial court's dismissal of her action against some of the defendants and the jury's verdict in favor of the remaining defendants. Accordingly, the Appellate Division's decision insofar as it ordered a new trial as to the defendants Ortho, Oroshnik and Johnson & Johnson is:

Reversed and the judgment entered in the trial court in favor of all of the defendants is reinstated. No costs.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN—6.

*For affirmance*—None.