UNITED STATES v. AMERICAN BELL TEL. Co. and others.[1]

(*Circuit Court, D. Massachusetts.*  September 26, 1887.)

PATENTS FOR INVENTIONS—CANCELLATION—POWER OF GENERAL GOVERNMENT.
    In the absence of any specific statute, the United States cannot maintain a bill in equity to cancel a patent for an invention. *Attorney General* v. *Chemical Works*, 2 Ban. & A. 298, *post*, 608, followed.

Bill in Equity by the United States, by direction of the solicitor general acting as attorney general against the American Bell Telephone Company and Alexander Graham Bell, to cancel letters patent of the United States No. 174,465, dated March 7, 1876, and No. 186,787, dated January 30, 1877, granted to Alexander Graham Bell, relating to the art of transmitting speech by electricity, on the ground that they were obtained by fraud. Defendants demurred to the bill generally and specially.

[1] Reported by E. C. Day, Esq., of the Editorial Staff of the National Reporter System.

*E. N. Dickerson, Chauncey Smith,* and *J. J. Storrow,* for the demurrer.

These patents have been vindicated in the courts. *Telephone Co.* v. *Dolbear,* 15 Fed. Rep. 448; *Same* v. *Telephone Co.,* 27 Fed. Rep. 663. When this bill was filed the records in these suits were under advisement by the supreme court. This bill asks this court to usurp the place of the supreme court; to find that all those decisions are wrong; to restrain those courts from enforcing their orders; to enjoin the supreme court from hearing those cases; to enjoin this court and all other circuit courts from obeying the supreme court mandates in those cases; to enjoin the Bell Company from asserting any right under those patents in any tribunal whatever. This cannot be done. *Attorney General* v. *Chemical Works,* 2 Ban. & A. 298, *post,* 608; *Neilson's Hot-Blast Patent,* Webst. Pat. Cas. 665; *U. S.* v. *Colgate,* 21 Fed. Rep. 318.

The attorney general has no power to bring, nor this court any power to entertain, a bill to cancel a patent for inventions under any circumstances. The attorney general is an officer of limited powers; this court is a court of limited jurisdiction. They can only exercise such powers as have been conferred upon them by law.

The terms of the patent act, and the practice and decisions under it, show that the proceeding has not been authorized. From 1790 to 1836 the power existed by statute in certain cases. Those statutes were repealed in 1836. Since that time only one patent has been canceled by bill, (*Gunning's Case,* 18 Fed. Rep. 511,) and in that case the patentee confessed that his patent was void. The other cases (four in number) have been dismissed on demurrer.

Where the patent system is the creation of statute this proceeding rests on positive enactment. In England, where the system rests solely on royal prerogative, *scire facias* to cancel patents has been adopted both by the crown and by express statute. Congress has the "sole power" over patents, and by the acts of 1790 and 1793 gave *scire facias* in certain cases. The power rested solely on the statute, and could not be exercised without it. *Ex parte Wood,* 9 Wheat. 603, (1824.) Act of 1836 repealed all provisions allowing proceedings to cancel patents, except in the case of interfering patents, which was retained by *express enactment.*

A bill in equity to cancel a patent for an invention cannot be maintained where a *scire facias* cannot. To grant a patent is an act of sovereignty. Its cancellation is equally an act of sovereignty. A bill will lie to cancel a patent for lands because the king may come into chancery in respect to his property like any other party. *Attorney General* v. *Vernon,* 1 Vern. 277. So the United States, as a property owner, may file a bill to cancel a patent for lands. But the United States does not grant a patent for an invention out of that which was property in its hands before the grant, or will become property in its hands after the expiration or cancellation of the patent.

The right to grant or cancel a patent for an invention is a governmental prerogative which congress alone has power to exercise. To assert that the "government" which grants can cancel, is to say that congress,—the legislative power, and not the judicial power,—can authorize the suit to recall. *Mowry* v. *Whitney,* 14 Wall. 439. The power can only be exercised in the manner prescribed by congress, and not otherwise. *McCulloch* v. *Maryland,* 4 Wheat. 317; *Osborn* v. *Bank,* 9 Wheat. 738; *McClurg* v. *Kingsland,* 1 How. 206; *Evans* v. *Jordan,* (a suit on a patent,) 9 Cranch, 199; *Kohl* v. *U. S.,* 91 U. S. 367. This is the basis for suits to cancel patents for land. *U. S.* v. *Schurz,* 102 U. S. 396, and citations.

Congress has not only by failing to give the power in the case of patents for inventions, by any existing legislation, but by its course of legislation,—its former grant of it, and the repeal of that grant,—prohibited it.

The power invoked has never been sustained by the supreme court, nor has any case been before it which called for its decision. It has never been elab-

orately considered at circuit but once, and then the power was denied. *Attorney General* v. *Chemical Works*, 2 Ban. & A. 298, 9 O. G. 1062, and *post*, 608. In *Rubber Co.* v. *Goodyear*, 9 Wall. 796, (an infringement suit,) the court decided that the question of fraud in procuring an extension was not open in an infringement suit, and left it to be regulated by "the principles of general jurisprudence." An action was then brought to cancel the patent, (*Rubber Co.* v. *Goodyear*, 9 Wall. 811,) and the bill was dismissed for want of equity; the patent having expired. *Mowry* v. *Whitney*, 14 Wall. 441, was an action to cancel a patent brought in the name of a private individual, and the court held the action could not be maintained. In *Mahn* v. *Harwood*, 112 U. S. 354, 5 Sup. Ct. Rep. 174, no reference was made to proceedings to cancel except to distinguish them from defenses in an infringement suit. *Gunning's Case*, 18 Fed. Rep. 511, held a bill would lie to cancel for *fraud;* but the action was not defended, and the fraud was admitted. In *U. S.* v. *Colgate*, *post*, 624, Judge WALLACE dismissed the bill as not resting on charges of fraud, and the patent had already been sustained. In *U. S.* v. *Frazer*, 22 Fed. Rep. 106, bill was dismissed as not involving fraud, and the ground could be considered in an infringement suit.

This bill does not state a case for equitable interference, within the general rules of equity jurisprudence.

The bill must affirmatively show that complainant is authorized to file it, and that the court is empowered to grant the relief.

The case made by the general frame of the bill, which is the only case the court deals with, (*Eyre* v. *Potter*, 15 How. 42,) rests on the general principles of equity jurisdiction relating to the cancellation of deeds, and can be extended no further. The bill avers that it is the right, and in proper instances the duty, of the attorney general to bring the bill for cancellation. If the power to cancel, like the power to grant, is a sovereign power, it cannot be exercised without the positive authority of congress. If the bill is to be maintained on the general equity power to cancel deeds, then the United States is to be governed by the rules governing a bill of a private suitor to cancel a deed. *U. S.* v. *Railroad*, 98 U. S. 569; *Fontain* v. *Ravenel*, 17 How. 369; *People* v. *Ingersoll*, 58 N. Y. 1; *City of Georgetown* v. *Coal Co.*, 12 Pet. 78; *Irwin* v. *Dixion*, 9 How. 27; *Miller* v. *Kerr*, 7 Wheat. 1: *Attorney General* v. *Detroit*, 26 Mich. 269; *Attorney General* v. *Ice Co.*, 104 Mass. 239; *Davenport* v. *Dodge*, 105 U. S. 242. This doctrine is true also when equity is invoked in aid of the prerogative right. *Root* v. *Railway Co.*, 105 U. S. 189, 192. Whatever be the foundation of the bill, it must not only make out a right, *e. g.*, that the patent is invalid, but must show grounds calling for the interposition of equity. The United States as a plaintiff in equity is subject to the rules of equity. *Brent* v. *Bank*, 10 Pet. 596, 614; *U. S.* v. *Throckmorton*, 4 Sawy. 58, affirmed on appeal, 98 U. S. 61; *U. S.* v. *Tichenor*, 12 Fed. Rep. 415; *U. S.* v. *Beebe*, 17 Fed. Rep. 37, 41; Story, Eq. Pl. 813; 2 Story, Eq. Jur. § 1520, and note 3. The bill must show on its face by specific allegations not only an equity in support of it, but that there is no equity to impair it; and where there are any facts or circumstances from which a countervailing equity may reasonably be inferred, such inference must be displaced by positive averments in the bill. *Miller* v. *Kerr*, 7 Wheat. 1; *U. S.* v. *Atherton*, 102 U. S. 372; *Sullivan* v. *Railroad Co.*, 94 U. S. 806; *Lansdale* v. *Smith*, 106 U. S. 391, 1 Sup. Ct. Rep. 350; *Stearns* v. *Page*, 7 How. 819, 829; *Moore* v. *Greene*, 2 Curt. C. C. 202, 19 How. 69; *Badger* v. *Badger*, 2 Wall. 87, 94; *The Key City*, 14 Wall. 653; *Harwood* v. *Railroad Co.*, 17 Wall. 78; *McQuiddy* v. *Ware*, 20 Wall. 14, 19; *Marsh* v. *Whitmore*, 21 Wall. 178, 185; *U. S.* v. *Throckmorton*, 98 U. S. 61; *Wood* v. *Carpenter*, 101 U. S. 135, 140; *Quinby* v. *Conlan*, 104 U. S. 420; *Ambler* v. *Choteau*, 107 U. S. 586, 590, 1 Sup. Ct. Rep. 556; *Wollensak* v. *Reiher*, 115 U. S. 96, 5 Sup. Ct. Rep. 1137; *Van Weel* v. *Winston*, 115 U. S. 228, 6 Sup. Ct. Rep. 22; *Blake* v. *Stafford*, 6 Blatchf. 196,

200; *Hazard* v. *Griswold*, 21 Fed. Rep. 178; *Wallingford* v. *Mutual Soc.*, 5 App. Cas. 685.    This it does not do.

The bill rests mainly on the jurisdiction of equity to cancel or reform contracts in cases of fraud practiced by the grantee on the grantor, or *mutual* mistake.    The mistake of the grantor alone is no ground.    Kerr, Fraud & M. 479; *Rooke* v. *Kensington*, 2 Kay & J. 753; *Fowler* v. *Fowler*, 4 De Gex & J. 250; *Griffiths* v. *Jones*, L. R. 15 Eq. 279; *Sells* v. *Sells*, 1 Drew. & S. 42.    No case of *mutual* mistake is made out, nor is there an allegation of a single fraudulent act of Bell or his representatives.

Equity will not interfere to cancel a deed or contract, simply because it is void, if the invalidity can be shown in any suit brought to enforce it, (*Insurance Co.* v. *Bailey*, 13 Wall. 616; *Hannewinkle* v. *Georgetown*, 15 Wall. 547; *Phelps* v. *Harris*, 101 U. S. 375; *Hapgood* v. *Hewitt*, 119 U. S. 226, 7 Sup. Ct. Rep. 193,) except to avoid a multiplicity of suits, in cases where the decision on the bill to cancel will be binding on all the parties, (*Orton* v. *Smith*, 18 How. 263;) or in cases where the facts showing invalidity rest merely in the memory of living witnesses, and the suit to enforce the contract may be delayed until such witnesses are dead.    The bill does not state a case within these rules.    The grounds which make the patent invalid could every one be set up in an infringement suit, and there is no suggestion in the bill to the contrary.

No controlling decision can be made here.    The power invoked is unilateral since the defendants cannot file a cross-bill to reform the letters patent.    *Butterworth* v. *U. S.*, 112 U. S. 50, 5 Sup. Ct. Rep. 25.    Equity will not exert her power in favor of a plaintiff unless he is the sole party in interest, or so situated with reference to the parties in interest as to render a decision against him binding on them.    *Kerrison* v. *Stewart*, 93 U. S. 155, 161; *Orton* v. *Smith*, 18 How. 263.

The bill must show some interest to be benefited by the decree.    *Marye* v. *Parsons*, 114 U. S. 328, 5 Sup. Ct. Rep. 932; *U. S.* v. *Railroad Co.*, 98 U. S. 589; *U. S.* v. *Minor*, 114 U. S. 244, 5 Sup. Ct. Rep. 836.

The United States granted away by these letters no property which it owned; the cancellation will give it nothing it can sell to another.    Nor does the patent prevent an identical grant to another, nor the enforcement of that grant on lawful grounds.    Rev. St. 4904, 4915.    But a land patent precludes a second grant, hence the ground of equitable interference.    *Van Wyck* v. *Knevals*, 106 U. S. 360, 1 Sup. Ct. Rep. 336; *Moore* v. *Robbins*, 96 U. S. 530; 4 Op. Atty. Gen. 149; 13 Op. Atty. Gen. 456.    If the United States sues as trustee for the people, the bill must state an equity arising out of their interests. *Orton* v. *Smith*, 18 How. 264; *Kerrison* v. *Stewart*, 93 U. S. 161.

A suit to cancel and a suit to enforce have in *actual interest* as close connection as if between the same parties.    *Bronson* v. *Kinzie*, 1 How. 311; *White* v. *Hart*, 13 Wall. 648.    There is therefore no equity to maintain a bill to cancel against a patent sustained in an infringement suit.    Decrees in equity bind all persons whose substantial interests are represented in the cause.    *Weale* v. *Water-Works*, 1 Jac. & W. 369; *Adair* v. *New River Co.*, 11 Ves. 429.    When a patent has been once declared valid, courts will follow that decision unless some new ground is shown.    *Purifier Co.* v. *Christian*, 4 Dill. 448; *Excavating Co.* v. *Lauman*, 12 Fed. Rep. 788; *Rumford Co.* v. *Hecker*, 10 O. G. 289; *Rubber Co.* v. *Goodyear*, 9 Wall. 788, 793.    Equity will not interfere against titles which have been judicially determined, unless upon ground which could not elsewhere be presented.    *Smith* v. *McIver*, 9 Wheat. 532, 534; *Ballance* v. *Forsyth*, 24 How. 183; *Hendrickson* v. *Hinckley*, 17 How. 443; *Bank* v. *Cooper*, 20 Wall. 171; *Insurance Co.* v. *Bangs*, 103 U. S. 780.    There is no equity to support a bill to cancel a sustained patent on grounds which are open in an infringement suit.    *Neilson's Hot-Blast Patent*, Webst. Pat. Cas. 665; *U. S.* v. *Colgate*, 21 Fed. Rep. 318; *Same* v. *Same*,

*post,* 624; *Asbestos Co.* v. *Salamander Co.,* 13 Blatchf. 453; *Celluloid Co.* v. *Vulcanite Co.,* Id. 375; *U. S.* v. *Frazer,* 22 Fed. Rep. 106; *Town of Mt. Zion* v. *Gillman,* 9 Biss. 479, 14 Fed. Rep. 123. It can be inferred from the bill that these patents have been universally sustained. *U. S.* v. *Atherton,* 102 U. S. 372; *Marquez* v. *Frisbie,* 101 U. S. 478. The court will take judicial notice of the fact that the patent has been sustained. *U. S.* v. *Railroad,* 98 U. S. 569; *Same* v. *Same,* 91 U. S. 72.

On a bill by the United States seeking to cancel a grant regular on its face, reciting that all the requirements of the law have been complied with, when the bill shows on its face that 11 years have elapsed since the issue of the grant; that it is now in the hands of a third person who is not alleged to have had knowledge of the defects,—the fact that the grant is by the United States, and is alleged to have been made in violation of the interests of the public, does not take the case out of the ordinary rules which equity applies to those who ask her aid, and in the face of such recitals the grant must stand. *Fletcher* v. *Peck,* 6 Cranch, 87, 133; *Railroad* v. *Attorney General,* 118 U. S. 694, 7 Sup. Ct. Rep. 66; *Grant* v. *Raymond,* 6 Pet. 218; *U. S.* v. *Atherton,* 102 U. S. 372; *U. S.* v. *Throckmorton,* 4 Sawy. 58, 98 U. S. 61; *U. S.* v. *McLaughlin,* 30 Fed. Rep. 162; *U. S.* v. *Minor,* 29 Fed. Rep. 134; *U. S.* v. *Beebee,* 17 Fed. Rep. 37, 41; *The Siren,* 7 Wall. 152; *Brent* v. *Bank,* 10 Pet. 596, 614; *Lytle* v. *Arkansas,* 9 How. 328. The supreme court has applied the doctrine of estoppel by recitals in such cases to actions on county bonds. *Zabriskie* v. *Railroad,* 23 How. 381; *Commissioners* v. *Aspinwall,* 21 How. 539; *Hotel Co.* v. *Wade,* 97 U. S. 13; *Lexington* v. *Butler,* 14 Wall. 282; *East Lincoln* v. *Davenport,* 94 U. S. 801; *Clay Co.* v. *Savings Soc.,* 104 U. S. 579; *Rock Creek* v. *Strong,* 96 U. S. 271; *Sherman Co.* v. *Simonds,* 109 U. S. 735, 3 Sup. Ct. Rep. 502; *San Antonio* v. *Mehaffy,* 96 U. S. 312; *Nauvoo* v. *Ritter,* 97 U. S. 389.

Whether the patentee was entitled to the patent must be tried in every action by him for infringement. *Mahn* v. *Harwood,* 112 U. S. 358, 5 Sup. Ct. Rep. 174; *Gardner* v. *Herz,* 118 U. S. 191, 6 Sup. Ct. Rep. 1027.

Equity will not cancel against a purchaser for value when the invalidity of the grant can be set up as a defense in the litigation likely otherwise to arise. *U. S.* v. *Minor,* 114 U. S. 233, 243, 5 Sup. Ct. Rep. 836, 29 Fed. Rep. 134.

The recitals in the patent are *prima facie* true, and in this action are absolutely true, except so far as they are displaced by specific allegations in the bill. *Brown* v. *Piper,* 91 U. S. 42; *Terhune* v. *Phillips,* 99 U. S. 592; *King* v. *Gallun,* 109 U. S. 99, 3 Sup. Ct. Rep. 85.

The grant of the patent is an adjudication which binds the United States as any other adjudication. *Butterworth* v. *U. S.,* 112 U. S. 50, 5 Sup. Ct. Rep. 25. And cannot be impeached for fraud of the agent of the United States. *U. S.* v. *Throckmorton,* 98 U. S. 61; *U. S.* v. *Atherton,* 102 U. S. 372; *Attorney General* v. *Chemical Works,* 2 Ban. & A. 298, *post,* 608. And it is immaterial that no appeal was taken from the decision of the commissioner of patents. *Leggett* v. *Avery,* 101 U. S. 256; *Vulcanite Co.* v. *Davis,* 102 U. S. 222.

But fraud in obtaining a patent for an invention is of no importance; for if the holder "is not justly entitled to it under the law," the objection can be raised in any infringement suit. *Mahn* v. *Harwood,* 112 U. S. 354, 358, 5 Sup. Ct. Rep. 174; *Gardner* v. *Herz,* 118 U. S. 191, 6 Sup. Ct. Rep. 1027.

Defects in the procedure in obtaining this patent cannot now be taken advantage of, since if they exist it is too late to correct them. *Fletcher* v. *Peck,* 6 Cranch, 83, 133; *Polk's Lessee* v. *Wendell,* 5 Wheat. 293, 304; *Grant* v. *Raymond,* 6 Pet. 218; *Railroad* v. *Attorney General,* 118 U. S. 693, 7 Sup. Ct. Rep. 66; *Smelting Co.* v. *Kemp,* 104 U. S. 636; *Lytle* v. *Arkansas,* 9 How. 314. The patent is conclusive against the grantor on these questions, (*Tarr* v. *Folsom,* 1 Holmes, 312, 5 O. G. 92, 1 Ban. & A. 24; *Anilin* v.

*Cochrane,* 16 Blatchf. 155, 4 Ban. & A. 215;) especially so in favor of a subsequent purchaser, (*Seymour* v. *Osborne,* 11 Wall. 541.)

The allegations of the bill are too vague. The deceit alleged is stated to have been accomplished by the language of the specifications. But the specifications have been sustained as covering the telephone. *Telephone Interferences,* 15 O. G. 776; *Telephone Co.* v. *Dolbear,* 15 Fed. Rep. 448; *Same* v. *National Imp. Tel. Co.,* 27 Fed. Rep. 663. There is no allegation of *willful intent to defraud,* nor any allegation of concealment, nor any allegation of recent discovery of fraud on the part of the United States. *In re Broderick's Will,* 21 Wall. 519; *Lockwood* v. *Cleveland,* 20 Fed. Rep. 164.

The fact that this form of action involving such enormous power is so unprecedented is a reason why this court should sustain the demurrer. *Mississippi* v. *Johnson,* 4 Wall. 500.

No power exists in the United States to cancel a patent in the absence of specific statute.

The English patent system was carried on as a part of the royal prerogative. Our constitution changed the character of the system by assigning the power to congress, and making the whole the creation of congressional legislation. There was no implied adoption of the English patent system, as there was of the common-law system. In countries where the power to cancel patents is retained it is now given by positive provision of statute. None of those countries have the examination before the issue of the patent, which takes the place, under the act of congress 1836, of the suit to cancel.

The basis of *scire facias* in England was—*First.* The original absence of any other mode of attacking a patent. *Second.* The branch of the government which grants a patent has the power to take it away. *King* v. *Butler,* 3 Lev. 220, 1 Strange, 141; *Queen* v. *Aires,* 10 Mod. 354; Hind. Pat. 377. Subject only to the need of the permission of the proper officer in order to prevent abuse, it was settled that a private citizen had a *right* to it. Hind. Pat. 384, 385, and cases cited. Gods. Pat. 271. The power of the chancellor to annul patents was not a part of his equity jurisdiction, but because, as the keeper of the great seal, he represented the person of the king. Hind. Pat. 378, 380, 383. *Third.* The ultimate basis was that the patent was granted on representation alone. Hind. Pat. 377.

This system was destroyed by statute, (Act 15 & 16 Vict. c. 83, § 15;) but *scire facias* was retained by express enactment. Act 1883, 46 & 47 Vict. c. 57, § 116, abolishes *scire facias,* and substitutes "petition to the court" by the attorney general or any authorized by him.

The bill in equity to cancel a patent rests solely on the right of the king, as any private individual, to come into equity in respect to his property. *Attorney General* v. *Vernon,* 1 Vern. 277. This is the United States doctrine as applied to patents for lands. *U. S.* v. *Hughes,* 11 How. 552, 4 Wall. 232; *U. S.* v. *Stone,* 2 Wall. 525; *Cotton* v. *U. S.,* 11 How. 229; *Jackson* v. *Lawton,* 10 Johns. 24. But the United States has no property rights in patents for invention, and a bill will not lie where *scire facias* would not. *Mowry* v. *Whitney,* 14 Wall. 436.

Under the federal constitution the power invoked is in congress, (Const. U. S. art. 1, § 8;) and not in the executive. *Floyd Acceptances,* 7 Wall. 676. No federal officer and no federal court can exercise governmental or judicial powers, unless given it by legislation. Id.; *McCulloch* v. *Maryland,* 4 Wheat. 317; *Osborn* v. *Bank,* 9 Wheat. 738; *McClurg* v. *Kingsland,* 1 How. 206; *Evans* v. *Jordan,* 9 Cranch, 199; *Kohl* v. *U. S.,* 91 U. S. 367. The act of congress of 1836 repealed the right here invoked.

Legislation which undertakes to cover the whole subject excludes all previous rules, whether statutes or common law. Sedg. St. & Const. Law, (2d Ed.) 30, 341, 343, 365, note; *Boston* v. *Shaw,* 1 Metc. 138; *Ellis* v. *Paige,* 1 Pick. 43; *Bartlet* v. *King,* 12 Mass. 537; *Nichols* v. *Squire,* 5 Pick. 168;

*Com.* v. *Cooley*, 10 Pick. 39; *Pollock* v. *Railroad Co.*, 124 Mass. 159; *King* v *Cornell*, 106 U. S. 396, 1 Sup. Ct. Rep. 312; *State* v. *Wilson*, 43 N. H. 418; *Davies* v. *Fairbairn*, 3 How. 636; *Dexter* v. *Allen*, 16 Barb. 18; *Com.* v. *Cromley*, 1 Ashm. 179; *Goddard* v. *Boston*, 20 Pick. 410.

Under our patent system proceedings not given by statute cannot be implied by analogy. *Butterworth* v. *U. S.*, 112 U. S. 50, 5 Sup. Ct. Rep. 25. The power now invoked did not exist under the acts of 1790 and 1793. *Ex parte Wood*, 9 Wheat. 603.

Congress intended to repeal *scire facias* by the act of 1836. See Phil. Pat. c. 25, and cases cited. Congressional legislation shows the intention not to authorize bills to cancel patents. Act of 1790, 1 St. 109; Act of 1793, Id. 318; Act of 1800, 2 St. 37; Act of 1819, 3 St. 481; Act of 1832, 4 St. 559. Congress by the act of 1836 intended to repeal the power to cancel. See Sen. Doc. 398, 23d Cong. 1st Sess.; Sen. Doc. No. 338, 24th Cong. 1st Sess. Congressional action since then shows that the power invoked does not exist. Sen. Jour. 31st Cong. 1st Sess. 260; H. B. 442, 1st Sess. 29th Cong.; H. B. 102, 1st Sess. 30th Cong.; S. B. 200, 2d Sess. 31st Cong.; S. B. 310, 1st Sess. 32d Cong.; S. B. 405, 1st Sess. 33d Cong.; S. B. 295, 1st Sess. 34th Cong.; Rep. 116, 2d Sess. 45th Cong.; Rep. 1400, 1st Sess. 47th Cong.; Rep. No. 4, 1st Sess. 48th Cong. The repeated refusal of congress to legislate is authority for the non-existence of the power. *U. S.* v. *Railroad Co.*, 120 U. S. 239, 7 Sup. Ct. Rep. 490.

The decisions and *dicta* sustain our view. *Crompton* v. *Belknap Mills*, 3 Fish. 547; *Goodyear* v. *Rubber Co.*, 2 Cliff. 351, 2 Fish. 499; *Rubber Co.* v. *Goodyear*, 9 Wall. 811; *Rubber Co.* v. *Goodyear*, Id. 796; *Merserole* v. *Paper Co.*, 6 Blatchf. 356; *Doughty* v. *West*, 6 Blatchf. 429; *Whitney* v. *Mowry*, 4 Fish. 208; *Mowry* v. *Whitney*, 14 Wall. 434; *Celluloid Co.* v. *Goodyear*, 13 Blatchf. 375; *Attorney General* v. *Chemical Works*, 2 Ban. & A. 298, *post*, 608; *U. S.* v. *Gunning*, 18 Fed. Rep. 511; *U. S.* v. *Frazer*, 22 Fed. Rep. 106; *U. S.* v. *Colgate*, *post*, 624.

The whole bill is an attempt to put into the statute what congress might have put in but did not. This is forbidden. *U. S.* v. *Railroad Co.*, 98 U. S. 617.

*John Goode*, Special U. S. Atty., for complainant.

The bill is not multifarious in that it joins allegations and prayers for relief in respect to two patents, since the two taken together make but one case. *Campbell* v. *Mackay*, 1 Mylne & C. 603; *Gaines* v. *Chew*, 2 How. 619; *Oliver* v. *Piatt*, 3 How. 333; 1 Coop. Eq. Pl. 182; Mitf. Eq. Pl. (Jeremy,) 181; Story, Eq. Pl. § 271 *et seq.;* Adams, Eq. 309, 310; 1 Daniell, Ch. Pl. & Pr. 384 *et seq.; Attorney General* v. *Cradock*, 3 Mylne & C. 85; *Gaines* v. *Mausseaux*, 1 Woods, 118; *Fellows* v. *Fellows*, 4 Cow. 682; *Bedsole* v. *Monroe*, 5 Ired. Eq. 313; *McLean* v. *Bank*, 4 McLean, 430. The mere setting out of more than one letters patent does not render the bill multifarious. *Case* v. *Redfield*, 4 McLean, 526; *Nourse* v. *Allen*, 4 Blatchf. 376; *Fire Alarm Tel. Co.* v. *Chillicothe*, 7 Fed. Rep. 351; *Seymour* v. *Osborne*, 11 Wall. 516; *Bates* v. *Coe*, 98 U. S. 48; *Nellis* v. *Manufacturing Co.*, 13 Fed. Rep. 451; *Manufacturing Co.* v. *Railroad Co.*, 15 Blatchf. 444; *Gillespie* v. *Cummings*, 3 Sawy. 259; *Shickle* v. *Foundry Co.*, 22 Fed. Rep. 105; *Barney* v. *Peck*, 16 Fed. Rep. 413; *Deering* v. *Harvester Works*, 24 Fed. Rep. 90; *Manufacturing Co* v. *Marqua*, 15 Fed. Rep. 400; *Lilliandahl* v. *Detwiller*, 18 Fed. Rep. 176; *Electric Light Co.* v. *Brush-Swan Co.*, 20 Fed. Rep. 502.

The bill sufficiently alleges a wrong, for which there must be a remedy.

Every government has the inherent right to revoke a grant made by it which has been procured by fraud, or which has been made through inadvertence or mistake. *Attorney General* v. *Vernon*, 1 Vern. 276; *King* v. *Butler*, 3 Lev 220; *Queen* v. *Aires*, 10 Mod. 354.

The attorney general has the power to bring an action to redress a public wrcng. *Lord Proprietary* v. *Jenings*, 1 Har. & McH. 92; *Attorney General* v. *Railway Co.*, 35 Wis. 425; *Attorney General* v. *Academy*, 52 Wis. 469, 9 N. W. Rep. 391.

The United States has power to maintain this action, and no additional legislation is necessary. *U. S.* v. *Gunning*, 18 Fed. Rep. 511; *Mowry* v. *Whitney*, 14 Wall. 434.

The United States may properly proceed by bill in equity to cancel patents for land issued ignorantly or in mistake, (*U. S.* v. *Stone*, 2 Wall. 525;) also when it has been defrauded. *U. S.* v. *Hughes*, 11 How. 552; *Field* v. *Seabury*, 19 How. 324; *Hughes* v. *U. S.*, 4 Wall. 232; *Moore* v. *Robbins*, 96 U. S. 536; *U. S.* v. *Throckmorton*, 98 U. S. 61; *U. S.* v. *Minor*, 114 U. S. 233, 5 Sup. Ct. Rep. 836; *Mahn* v. *Harwood*, 112 U. S. 355, 5 Sup. Ct. Rep. 174, dissenting opinion MILLER, J., *Doughty* v. *West*, 6 Blatchf. 433; *Rubber Co.* v. *Goodyear*, 9 Wall. 788. Such has been the practice of the department of justice. 1 Op. Atty. Gen. 458; 4 Op. Atty. Gen. 120.

*U. S.* v. *Frazer*, 22 Fed. Rep. 106, was not such a case as authorized the institution of a suit in the name of the United States, since the aggrieved party could have brought suit under act of 1836, § 16. *Attorney General* v. *Chemical Works*, 2 Ban. & A. 299, *post* 608, does not decide against the power of the United States, but only the power of the attorney general, to institute the suit.

The great weight of authority is in favor of the bill. Curt. Pat. 663; Walk. Pat.

The only effect of the act of congress of 1836 was to take away from courts the power to annul patents as an incident to a private suit, since that was all that was given by the Acts of 1790 and 1793. The power in the government to vacate a patent is inherent, and a common-law right. The act of 1790 merely conferred the power on private individuals, and the repeal of that act by the act of 1836 can have no effect on the power of the government.

There is no difference, as regards the principle we now contend for, between patents for inventions and patents for land. *U. S.* v. *Gunning*, 18 Fed. Rep. 511; *Mowry* v. *Whitney*, 14 Wall. 434; *Rubber Co.* v. *Goodyear*, 9 Wall. 797. A patent is a contract between the government and the patentee. The consideration is the invention or discovery of the patentee. And if there is a failure of consideration, the contract may be avoided by the party wronged. The inventor can only acquire the right granted by complying with the provisions of the law.

The bill sufficiently states a case entitling plaintiff to the relief prayed for.

Delay in bringing a suit in a patent case is not always laches, (*Green* v. *French*, 4 Ban. & A. 171;) and the bill shows that the suit has been prosecuted with the utmost diligence.

*Hunton & Chandler*, Special U. S. Attys., for complainant.

The executive department is charged with the execution of the laws, and if it decides that it is necessary to institute suit in the name of the government, the court has no discretion affecting the bringing of the suit. That part of the demurrer alleging that plaintiff has not stated a case that would justify the court, in the exercise of its discretion, in entertaining the bill, sets up no legal ground of demurrer.

No express power is necessary to be conferred upon the executive to file this bill. The United States, as a public and political corporation, has the power inherent in corporations to bring actions to enforce its rights and redress its wrongs. 1 Dill. Mun. Corp. § 31; *Indiana* v. *Woram*, 6 Hill, 33; *Delafield* v. *Illinois*, 2 Hill, 162; Ang. & A. Corp. §§ 369, 370; *U. S.* v. *Bank*, 15 Pet. 401; *Cotton* v. *U. S.*, 11 How. 231; *Dugan* v. *U. S.*, 3 Wheat. 181; Story, Const. § 1674; Spear, Fed. Jud. 101; Cooley, Const. Lim. 15, [12.]

Upon the principle that the king can do no wrong is based the power of the government to redress wrongs done in its name. Broom, Leg. Max. 43, 44. This doctrine applies to patents. Id. 44, and citations. This too is the origin of *quo warranto*, (High, Extr. Rem, §§ 592, 593;) also the old writ of *scire facias*, (*King* v. *Butler*, 3 Lev. 223; Bac. Abr. "Scire Facias," C, 138; 2 Tidd, Pr. 1139, 8th Ed.; 2 Chit. Archb. 8th Ed. 1023; *Brewster* v. *Weld*, 6 Mod. 230; Fost. Sci. Fa. 12, 228; Hind. Pat. 379.)

This inherent right has never been repealed or taken away. The government's right to sue is not affected by statutes relating to suits between individuals. *Tobin* v. *Reg.*, 14 C. B. (N. S.) 505; Chit. Prerog. 266, 383; *Reg.* v. *Copeland*, Car. & M. 516; Broom, Leg. Max. 58; Sedg. St. & Const. Law, 395; *Josselyn* v. *Stone*, 28 Miss. 753; *U. S.* v. *Hoar*, 2 Mason, 314; 1 Kent, Comm. 460.

The fact that congress has permitted by statute certain defense to be made to a patent by a private person when sued in an action for infringement cannot be construed to abridge the power or right of the government to sue. Fost. Sci. Fa. 245; Hind. Pat. 64; Gods. Pat. 270.

*Scire facias* was practically a double remedy, by the crown, and by the subject in the name of the crown. *Smith* v. *Upton*, 6 Man. & G. 251, note; Gods. Pat. 270; *Brewster* v. *Weld*, 6 Mod. 229; *Rex* v. *Eyre*, 1 Strange, 43; 2 Bac. Abr. "Prerogative," F 1. And the United States, by giving private citizens remedies, in no way abridges its own powers to repeal patents at its own instance. The remedy of the goverment reaches results that cannot be reached in private litigation. Fost. Sci. Fa. 243; 21 Jac. I. c. 3, § 2; 3 Inst. 182, 183; Webb, Pat. 31; Gods. Pat. 262; *Arkwright* v. *Mordaunt*, Dav. Pat. Cas. 69; Id. 37; *Reg.* v. *Arkwright*, Dav. Pat. Cas. 61; Hind. Pat. 305; Webb, Pat. 26, 106; *Trew* v. *Guppy*, 1 Mylne & C. 487.

The officers of the government had no power to grant a patent to Bell for the invention of another, (Broom, Leg. Max. 42; *Thomas* v. *Waters*, Hardr. 443; 2 Rolle, Abr. 164; *King* v. *Butler*, 3 Lev. 220;) nor unless he conformed strictly to the law of procedure, (Walk. Pat. § 178; *Grant* v. *Raymond*, 6 Pet. 218; *Smelting Co.* v. *Kemp*, 104 U. S. 636, 647.) If the law of procedure was not followed, the patent is void. Broom, Leg. Max. 66; *Rex* v. *Wilkes*, 4 Burrows, 2539; *Yick Wo* v. *Hopkins*, 118 U. S. 369, 372, 6 Sup. Ct. Rep. 1064; *Dynes* v. *Hoover*, 20 How. 80; 2 Whart. Ev. § 794, note 4, § 796; *Windsor* v. *McVeigh*, 93 U. S. 282. The demurrer admits the allegations of defects in procedure, and such admission is fatal.

Lapse of time cannot affect the right of the government to bring this action. Broom, Leg. Max. 50; Bac. Abr. "Prerogative" E 6; Sedg. St. & Const. Law, 106.

The bill need not state the evidence upon which the case is to be made out by the government. Story, Eq. Pl. §§ 28, 252, 253; *Chicot* v. *Lequesne*, 2 Ves. 317, 318; *Wheeler* v. *Trotter*, 3 Swanst. 177; *Nesmith* v. *Calvert*, 1 Woodb. & M. 34; *Clark* v. *Periam*, 2 Atk. 337; *St. Louis* v. *Knapp Co.*, 104 U. S. 658.

The demurrer is bad on its face as being a demurrer to the whole bill and also a demurrer to separate and distinct parts of the bill for and upon like grounds. Story, Eq. Pl. §§ 442, 444; Eq. Rules, 32, 36; Daniell, Ch. 584; *Manufacturing Co.* v. *Prime*, 14 Blatchf. 371; *Heath* v. *Railway Co.*, 8 Blatchf. 412; *Livingston* v. *Story*, 9 Pet. 632, 658; *Atwill* v. *Ferrett*, 2 Blatchf. 43, and citations.

*Charles S. Whitman*, special counsel for complainant.

The cases which deny the existence of the power claimed in this bill are *dicta*. The only point necessary to be decided in *Attorney General* v. *Chemical Works*, 2 Ban. & A. 298; *post*, 608, was that the information should be filed in the name of the United States.

The learned judge is not supported in his view, that a patent in the United States is not a monopoly in the sense of the common law. 8 Coke, Inst. 181, defines a monopoly. There is no difference in principle between the English patent and the United States. The English patent was granted for a *new* invention. *Darcy* v. *Allen*, 11 Coke, 84; *Clothworkers of Ipswich*, Godb. 252; 3 Coke, Inst. 85, 181; Bac. Abr. "Monopoly and Prerogative;" Shep. Abr. pt. 3, 61; Hawk. P. C. pt. 1, c. 79, § 2. The relations between the government and patentee are the same in England and the United States. *Shaw* v. *Cooper*, 7 Pet. 318; Coryt. Pat. 41; Hind. Pat. 1151; *Cartwright* v. *Eamer*, 14 Ves. Jr. 131; *Neilson* v. *Hartford*, Web. P. R. 341.

The examination required before issuing a patent cannot be intended to take the place of an action to cancel. The remedy is defective. See Commissioner of Patents report to Congress, 1868; *U. S.* v. *Gunning*, 22 Fed. Rep. 653.

Patents for inventions in England are treated as on the same footing as patents for land. *Morgan* v. *Seaward*, 1 Webst. Pat. Cas. 187. It has never been considered in this country or England that the government granted away any interest in property, when it issued letters patent for inventions. Hind. Pat. 235; Drew. Pat. 4. The supreme court has held that the case of the government is stronger in repealing a patent for invention than in repealing a land grant. *Rubber Co.* v. *Goodyear*, 9 Wall. 788.

*Mowry* v. *Whitney*, 14 Wall. 432, is relied on as a case of interfering patents, but the justice who rendered the opinion expresses his view of the case as otherwise. *Mahn* v. *Harwood*, 112 U. S. 354, 5 Sup. Ct. Rep. 174.

The act of 1836 did not introduce a new system, it merely authorized a return to an old one. The only effect of the repeal of the clause relating to *scire facias* was to take away the power to cancel patents in private suits. The practice under the act of 1790 was inconvenient, (*Stearns* v. *Barrett*, 1 Mason, 164,) hence it was repealed.

*U. S.* v. *Frazer*, 22 Fed. Rep. 107, holds that the United States will not allow the use of its name to fight out a contest between private individuals.

Defenses in infringement suits offer no protection against vexatious litigation. *Tilghman* v. *Proctor*, 102 U. S. 707; Smith, Pat. 30.

A patent cannot be impeached in an infringement suit for fraud or mistake in its issue. *Doughty* v. *West*, 6 Blatchf. 429: *Celluloid Co.* v. *Vulcanite Co.*, 13 Blatchf. 375; *Foster* v. *Lindsay*, 2 Ban. & A. 175; *Gear* v. *Grosvenor*, 1 Holmes, 215; *Crompton* v. *Belknap Mills*, 3 Fish. Pat. Cas. 547; *Paper Co.* v. *Paper Co.*, 8 Blatchf. 543; *Whitney* v. *Mowry*, 4 Fish. Pat. Cas. 207; *Tilghman* v. *Mitchell*, 9 Blatchf. 18; *Rubber Co.* v. *Goodyear*, 9 Wall. 788; *Railroad Co.* v. *Dubois*, 12 Wall. 47; *Seymour* v. *Osborne*, 11 Wall. 516; *Eureka Co.* v. *Bailey Co.*, Id. 488; *Mowry* v. *Whitney*, 14 Wall. 434.

Also *A. G. Thurman, Grosvenor P. Lowry, W. C. Strawbridge*, and *George M. Stearns*, for the Government.

Also *Geo. L. Roberts*, for defendants.

Before COLT, Circuit Judge, and NELSON, District Judge.

COLT, J. This is a demurrer to a bill in equity filed by the United States by direction of the solicitor general, acting as attorney general, against the American Bell Telephone Company and Alexander Graham Bell. The main purpose of the bill is to cancel two patents granted to Bell, relating to the art of transmitting speech by electricity, on the ground that they were obtained by fraud. The bill contains numerous allegations. We will refer to some of the more important in order to show its general character.

It charges that Bell was not the first inventor of the speaking telephone;

that Phillip Reis, of Germany, and others, had previous to his invention devised an apparatus for the transmission of speech by electricity; that at the time of issuing the first patent, which covers the process or method, Bell was not able to transmit articulate speech by the method or with the apparatus described in his application; that he purposely framed his application and claim in ambiguous and general terms to cover antecedent and future inventions, and to deceive and mislead the examiner of the patent-office; that he did in fact mislead the examining officers of the patent-office, and caused them to regard his alleged invention as an improvement in telegraphy, and not as an invention of the telephone; that Elisha Gray of Chicago filed a *caveat* in the patent-office on the same day that Bell filed his application, but prior in point of time; that the claim in said *caveat* was for "the art of transmitting vocal sounds or conversation telegraphically through an electric circuit;" that the examining officer of the patent-office, contrary to the statute, communicated to Bell the fact and the date of the filing of said *caveat*, and the nature of the claim contained therein; that thereupon Bell, by his attorneys, unlawfully and contrary to the fact obtained a determination of the patent-office that said *caveat* was filed after said application; that on or about the twenty-sixth of February, 1876, the examining officer did exhibit to Bell the drawings and *caveat* of Gray, and describe to him the construction and mode of operation of the telephone therein described, and that Bell did proceed without delay to make substantial amendments of his specification and claims; that such amendments relate to those parts of Bell's invention which constitute the cardinal feature of his patent, to-wit, the transmission of sounds by gradual or undulatory changes in the electric current, as distinguished from alternate or pulsatory changes; that the second patent, No. 186,787, was obtained by fraud upon Amos E. Dolbear.

The bill prays that this court may decree that said patents are, and have been since the date of sealing and delivery, null and void; that they were wrongfully procured to be issued by means of fraud, false suggestion, concealment, and wrong on the part of said Bell, and that the American Bell Telephone Company may be perpetually enjoined from setting up any right or claim under said letters patent, or from alleging the same in any court within the United States as evidence of any grant or right conferred on said Bell.

The first and principal question raised by this demurrer is whether, in the absence of any specific statute, the United States, by direction of the attorney general, can maintain a bill in equity to cancel a patent for an invention. The question is by no means free from difficulty, and the decisions of the courts in the few cases where the point has been raised are conflicting. Upon consideration we are of the opinion that the carefully considered decision of Judge SHEPLEY, of this circuit, in *Attorney General* v. *Chemical Works*, 2 Ban. & A. 298, *post*, 608, to the effect that the government, in the absence of any express enactment, has no power to bring a bill in equity to cancel a patent, is sound, and should be followed by this court in this case. Our whole patent system

rests upon a constitutional provision and the statutes passed by congress. By article 1, § 8, of the constitution, congress has the power of securing, for limited times, to authors and inventors the exclusive right to their respective writings and discoveries, and to make all laws which shall be necessary and proper for carrying into execution this power. To the constitution and the acts of congress, therefore, and to these sources alone, we must look for the rights and remedies of patentees. Congress could have provided that the government should have the right to bring suit to cancel a patent for an invention on the ground of fraud, but congress has not seen fit to incorporate such a provision into the patent laws, and that is a sufficient answer to this bill. As was said by Mr. Justice MILLER, in *U. S.* v. *Railroad*, 98 U. S. 569, 616:

"Congress might also have directed the attorney general, either as part of this proceeding or as an independent one, to ask the court to declare the franchise of the company forfeited. It might have ordered a bill to inquire if the company was insolvent, and, if so, to wind up its affairs and distribute its assets. In short, there are many modes in which the legislature could have called into operation all the judicial powers known to the law. But it has not done so, and that is the constantly recurring answer to this bill."

We think the history of patent legislation under the constitution tends to show that congress never intended this power to be exercised under the present law. The act of April 10, 1790, (1 St. 109,) was the first statute passed on the subject of patents. Section 5 of the act provided that where a patent was obtained surreptitiously or upon false suggestion, the judge of the district court, upon affidavit being filed, should grant a rule to show cause why process should not issue to repeal the patent. By section 10 of the act of February 21, 1793, (1 St. 318,) the time was extended from one to three years after issuing the patent for instituting proceedings before the judge of the district court for its repeal. In addition to the proceeding under section 5, the act of 1790 also provided by section 6 that in an action for the penalty the defendant might set up certain defenses to the patent. By section 6 of the act of 1793, these defenses were greatly enlarged. It thus appears that by the Acts of 1790 and 1793, where a patent was obtained surreptitiously or upon false suggestion, a process might issue for its repeal in the nature of a *scire facias* at common law. In *Ex parte Wood*, 9 Wheat. 603, Mr. Justice STORY, in construing section 10 of the act of 1793, declared that the jurisdiction given to the court is not general and unlimited, but is confined to cases where the patent was obtained surreptitiously or upon false suggestion, and that the object of the statute was to provide some means to repeal patents so obtained, which were the cases where a *scire facias* issued at common law; and, further, that "as the patents are not enrolled in the records of any court, but among the rolls of the department of state, it was necessary to give some directions as to the correct time and manner of instituting proceedings to repeal them." It does not appear that Judge STORY recognized any jurisdiction of this court to entertain suits to cancel patents independent of the express provisions of the statute law. On the contrary, he deemed it necessary that congress

should give directions as to the time and manner of instituting proceedings to repeal.

The next important legislation on this subject was the act of July 4, 1836, (5 St. 117,) which, with some amendments not important here to consider, remains the law to-day. This act established a patent-office with a commissioner, chief clerk, and examiners, and directed them to examine all applications for patents, and to grant only those which possessed the elements of patentability. In this act, wherein congress created a complete patent system, it was not deemed necessary to retain the old proceeding to cancel a patent found in the Acts of 1790 and 1793. After observing the working of the old law for more than 40 years, congress deliberately eliminated this provision in the new act, and it may be presumed substituted provisions which in its opinion afforded better security to the public as well as to the patentee.

The design of the new law was to have such proceedings taken, and such an examination made before a patent was granted, as to guard against the issuing of invalid patents, and so prevent the abuses complained of under the old system. In *Butterworth* v. *U. S.*, 112 U. S. 50, 5 Sup. Ct. Rep. 25, it is held that the proceedings in the patent-office are essentially judicial in their character, and, further, that the framework of the system excludes any appellate power not therein specifically provided for,—such as an appeal to the secretary of the interior. But congress did not stop here. By section 15 of the act a defendant in an infringement suit may set up various defenses to the validity of the patent; he may show that for the purpose of deceiving the public the description and specification filed by the patentee was made to contain less than the whole truth relative to his invention, or more than was necessary to produce the desired effect, or that he had surreptitiously and unjustly obtained a patent for that which was invented by another, or that the invention had been described in some public work prior to his invention, or that he was not the first and original inventor, or that the invention had been in public use or on sale with the consent of the patentee prior to his application. By section 16 an applicant, having been refused a patent on the ground that it would interfere with an unexpired patent previously granted, was permitted to file a bill in equity in the circuit court, and try the question whether or not he was entitled to a patent; or in the case of two interfering patents any party interested might bring a bill in equity against the other party in the circuit court, and the court may cancel either patent in whole or in part. By these several provisions of the act of 1836 it would seem that congress thought the public as well as the patentee were sufficiently protected without retaining the old proceedings to cancel a patent found in prior acts.

The supreme court have decided that a defendant in an infringement suit is not limited to the statutory defenses. He may show that the commissioner has exceeded his power in granting or reissuing a patent, or that the patented thing does not amount to a patentable invention. *Mahn* v. *Harwood*, 112 U. S. 354, 5 Sup. Ct. Rep. 174; *Gardner* v. *Herz*, 118 U. S. 180, 6 Sup. Ct. Rep. 1027. As the law now stands it is dif-

ficult to conceive of a good defense to a patent which cannot be raised in an infringement suit. In *Rubber Co.* v. *Goodyear*, 9 Wall. 788, and *Mowry* v. *Whitney*, 14 Wall. 434, it was held that the question whether the extension of a patent had been improperly obtained could not be inquired into in an infringement suit, but the statute relating to extensions has been repealed, except as to patents granted prior to March 2, 1861.

The intent of congress is further shown by the fact that although repeated attempts have been made to amend the law so as to give some process by which an invalid patent may be vacated, the legislature has refused to act. In the present condition of the law there would seem to be no necessity for invoking the power assumed by this bill, and the course of legislation not only fails to show any intention on the part of congress to clothe the government with this power, but rather goes to show its intentional exclusion. If the power of the government to cancel a patent for an invention exists, it must be by implication, and it must spring from the general principles of equity jurisprudence; and here it becomes important to inquire into the history and character of this power and the procedure under it in England. In England the patent system was based upon the royal prerogative. The grant of a patent was a matter of grace and favor, and the crown might annex to the grant any conditions it pleased. The causes for which a patent may be revoked are stated in the proviso to be, if the grant is contrary to law, or prejudicial or inconvenient to her majesty's subjects, or if the invention was not new, or not invented by the patentee. Hind. Pat. 264. In England the power to revoke a patent was in its nature sovereign. The proceeding for avoiding and canceling a patent was by writ of *scire facias* taken in the common-law side of the court of chancery, being the court in which the patent issued. *Scire facias* lay to repeal a patent in three cases:

(1) When the king by his letters patent granted the same thing to several persons, the first patentee shall have a *scire facias* to repeal the second patent.

(2) When the king granted a thing upon false suggestion, he may by his prerogative *jure regis* have a *scire facias* to repeal his own grant.

(3) When the king has granted anything which by law he cannot grant, he, *jure regis*, for the advancement of justice and right, may have a *scire facias* to repeal his own letters patent. 4 Inst. 88. Hind. Pat. 234.

To quote from the opinion of Judge SHEPLEY in the *Rumford Chemical Works Case*:

"As the letters patent issued under the great seal, and the enrollment of every patent remained of record in the court of chancery, the lord chancellor, in the common-law court of chancery, or, in the words of Sir Edward Coke in the fourth Institute, the 'one ordinary *coram domino rege in cancellaria,* wherein the lord chancellor or lord keeper of the great seal proceeds, according to the right line of the laws and statutes of the realm,—*secundum legem et consuetudinem Angliæ,*' has power to hold plea of *scire facias* to repeal letters patent under the great seal, and to cancel the patent, and also the enrollment of it. *King* v. *Butler*, 3 Lev. 221; 2 Vent. 344. * * * These legal proceedings were in the office called 'The Petty Bag,' the office of the

court of chancery in which all common-law proceedings of the court were carried on, all the pleadings and other common-law proceedings being entitled ' In the Petty Bag Office in Chancery.' The action of *scire facias* was not only a remedy provided by law for the crown in behalf of the public, but also for any subject of the crown who could show that a void or illegal patent operated to his prejudice. Thus, in *Butler's Case,* before cited, Lord Chancellor FINCH said: ' Where a patent is granted to the prejudice of the subject, the king of right is to permit him, upon his petition, to use his name for the repeal of it.' Every person is presumed to have such an interest in a patent for an invention that, if he alleges that it is illegal or void, he is entitled, as of right, to a *scire facias* in the name of the queen, in order to repeal it. *Queen* v. *Aires,* 10 Mod. 354; *Queen* v. *Ballivos,* 1 P. Wms. 207; Vin. Abr. ' Prerogative,' T. b.; U. b. 8. Such proceedings were always in the name of the crown. ' The only means which the law provides for the repealing of letters patent ' (for inventions) ' is by action of *scire facias* at the suit of the queen,' (Hind. Pat. 64,) and, as we have seen, this was a *quasi* common-law proceeding, with the right of trial by jury. This right and this mode of proceeding were preserved by the express provisions of the modern statutes, which, while providing for a new seal to patents, and for filing the specifications in such office as the new commissioners might designate, also enacted that ' the writ of *scire facias* shall lie for the repeal of any letters patent issued under this act in the like case as the same would lie for the repeal of letters patent which may now be issued under the great seal.' No instance can be found, it is believed, of any other proceeding in England than a *scire facias* to repeal letters patent for an invention. It is contended in the case at bar that the case of the *Attorney General* v. *Vernon,* 1 Vern. 277, is an authority for the repeal of letters patent by a bill in chancery. But this case was without a precedent, and has never been followed in England, and cannot be claimed to be a precedent for a bill in equity to repeal letters patent for an invention which issue under the great seal and are recorded in chancery."

It appears, therefore, that the power to cancel a patent in England was in the nature of a royal prerogative, and that the proceeding was by writ of *scire facias.* It is admitted that this form of chancery proceeding is not in use in this country, and it is equally true that the prerogative rights of the crown of England have not descended upon the president of the United States. With us the people are the source of power, and each branch of the federal government can exercise only those powers which are delegated to it by the people, and are found in the constitution and the statutes. The constitution does not give the federal judiciary any of the powers which were exercised in England by the chancellor as the representative of the king, and by virtue of the king's prerogative as *parens patriæ.*

" When this country achieved its independence, the prerogatives of the crown devolved upon the people of the states; and this power still remains with them, except so far as they have delegated a portion of it to the federal government. The sovereign will is made known to us by legislative enactment. The state as sovereign is *parens patriæ.* ❋ ❋ ❋ The courts of the United States cannot exercise any equity powers except those conferred by acts of congress, and those judicial powers which the high court of chancery in England, acting under its judicial capacity as a court of equity, possessed and exercised at the time of the formation of the constitution of the United States. Powers not judicial, exercised by the chancellor merely as the representative

of the sovereign, and by virtue of the king's prerogative as *parens patriæ,* are not possessed by the circuit courts."

Such is the language of the supreme court in *Fontain* v. *Ravenel,* 17 How. 369–384.

The decisions of the federal courts respecting patents for lands are not in our opinion applicable to patents for inventions. In the case of land the government is the owner of property, and if that property is fraudulently conveyed it has the same right as an individual to recover it back. Its rights and remedies are the same as a private citizen's in such a case. But in issuing letters patent for an invention, to quote Judge SHEPLEY:

"Nothing is granted which belonged before to the United States. The issue of letters patent is in compliance with an act of congress. The rights and remedies of the parties are dependent solely on the statute enactments, and do not grow out of any previous ownership of the supposed subject of the grant, as in the case of a conveyance of lands."

The cases cited bearing on the question of the power of the government to bring in this suit, are *Rubber Co.* v. *Goodyear,* 9 Wall. 788; *Mowry* v. *Whitney,* 14 Wall. 434; *Attorney General* v. *Chemical Works, supra; U. S.* v. *Gunning,* 18 Fed. Rep. 511, and 23 Fed. Rep. 668; *U. S.* v. *Frazer,* 22 Fed. Rep. 106; *U. S.* v. *Colgate,* 21 Fed. Rep. 318; *Mahn* v. *Harwood,* 112 U. S. 354, 5 Sup. Ct. Rep. 174. The question has never been directly before, nor passed upon by, the supreme court, though the plaintiff insists that certain *dicta* of that court in *Rubber Co.* v. *Goodyear* and *Mowry* v. *Whitney* recognize the existence of this power. *Rubber Co.* v. *Goodyear* and *Mowry* v. *Whitney* were cases of extended patents, and the court decided that the question whether an extended patent had been obtained by fraud was not open in an infringement suit. In these cases the court did not decide that the government, through the attorney general, could bring a bill for the purpose of vacating a patent; that point was not before the court for determination. All the court said was, and this is the extent of the *dictum,* that no one but the government, either in its own name or in the name of its appropriate officer, could institute judicial proceedings to cancel a patent, except in the cases provided for in section 16 of the act of July 4, 1836. The case of *Mahn* v. *Harwood* was upon a reissued patent, and the majority of the court held that the defense of laches in applying for a reissue could be set up in an infringement suit. Mr. Justice MILLER, in a dissenting opinion, takes the position that this cannot be done, inasmuch as congress, by statute, has specifically mentioned the five defenses that may be raised in an infringement suit, and he then goes on to say that congress intended all other causes for impeaching a patent should be prosecuted in the usual mode of *scire facias,* or bill in chancery brought by the proper law officers of the government to set it aside.

In this circuit, in the case of *Attorney General* v. *Chemical Works,* the question was fairly presented and decided in the learned and carefully considered opinion of Judge SHEPLEY, and the conclusion reached that the power sought to be invoked by this bill does not exist in the absence of a specific statute.

In *U. S.* v. *Gunning*, a bill was brought to repeal the Gunning patent. It was demurred to on the ground of want of authority in the plaintiff to bring, or the court to entertain, the suit, and for want of equity. Judge WALLACE overruled the demurrer. This case is in direct conflict with *Attorney General* v. *Chemical Works.*

In *U. S.* v. *Frazer*, 22 Fed. Rep. 106, a bill was brought to cancel two patents on the ground that the defendant falsely and fraudulently made oath that the alleged improvements had not been before known or used, when in fact they had been publicly known and used more than two years prior to the application therefor. Judge BLODGETT, in sustaining the demurrer, said:

"It is true that it is an imposition on the patent-office to falsely make an affidavit that a device for which a patent is asked has not been known and used prior to the invention thereof by the applicant for the patent. Such conduct may justly be said to be fraudulent; but it is a fact which goes to the validity of his patent, and may be pleaded by any person against whom the patentee brings suit; and it seems to me that it would be better to leave the litigation of questions like this, which constitute a defense in patent cases, to the parties directly interested, rather than that the government should lend its name to a suit really in the interest only of certain private parties. The practice here inaugurated will, if followed, transfer nearly all litigation on patents, except mere questions of fact as to infringement, to the office of the attorney general, instead of leaving it in the hands of the persons directly interested. * * * I do not intend to be understood as holding that a bill in chancery will not lie in any case to annul a patent obtained by fraud, but only that this bill does not, in my opinion, make such a case as requires or authorizes the United States to allow the use of its name to fight out a contest between these individuals."

The opinion of Judge BLODGETT would seem to be that if the attorney general can bring a bill to cancel a patent in any case, he cannot bring such a bill on grounds which constitute a defense in infringement cases, and the language of Mr. Justice MILLER in *Mahn* v. *Harwood* would appear to go no further than to suggest that a bill might lie by the proper law officers of the government to cancel a patent in those cases where the statutory defenses do not apply. It would seem, then, that if this power exists its exercise should be limited to cases where the statutory defenses fail to reach the case. To hold otherwise would turn patent litigation largely into the hands of the government, which plainly was not the intention of the present law. *Rubber Co.* v. *Goodyear* and *Mowry* v. *Whitney* were cases of extended patents, where the extension was obtained by alleged fraud or false swearing in the patent-office, and that defense under the statute could not be set up in an infringement suit.

But that is not the case now before us for consideration. The main grounds on which the validity of the Bell patents are attacked in this bill can be raised in an infringement suit. Among the defenses provided by section 4920 of the Revised Statutes, in any action for infringement, are:

*First.* That for the purpose of deceiving the public the description and specification filed by the patentee in the patent-office was made to contain less than the whole truth relative to his invention or discovery, or more than is neces-

sary to produce the desired effect. *Second.* That he had surreptitiously or unjustly obtained the patent for that which was in fact invented by another who was using reasonable diligence in adapting and perfecting the same. *Third.* That it had been patented or described in some printed publication prior to his supposed invention or discovery. *Fourth.* That he was not the original or first inventor or discoverer of any material or substantial part of the thing patented.

The necessity which might possibly arise in some cases for the exercise of this power by the government seems to be wanting in the present case.

The question of power raised by this bill is an important one, and in view of the conflict of authority it can only be definitely settled by the supreme court. It is manifestly our duty in the present case, unless clearly satisfied that Judge SHEPLEY was wrong, to follow the law as established in this circuit in the most learned and exhaustive opinion to be found on the subject.

The demurrer to the bill is sustained, and the bill dismissed.